(90 App. Div. 555.)

PEOPLE ex rel. VAN NORDER v. SEWER, WATER, AND STREET COMMISSION OF VILLAGE OF SARATOGA SPRINGS et al.

(Supreme Court, Appellate Division, Third Department.  January 6, 1904.)

1. HIGHWAYS—HACKMEN—LICENSE—REVOCATION—CONSTITUTIONAL LAW.

Laws 1902, p. 1216, c. 503, § 40, prohibiting any hackman from permitting his horse or vehicle to stand in any public street of the village of Saratoga Springs for hire, or to walk or drive through the streets soliciting patronage, was not unconstitutional, as depriving a hackman of his property without due process of law, since such hackman had no legal right to conduct his business in a public street, except as licensed so to do.

2. SAME—LICENSES—ISSUANCE—REVOCATION.

Under Laws 1902, p. 1202, c. 506, § 9, subd. 23, and section 41, p. 1217, as amended by Laws 1903, p. 465, c. 192, authorizing the village of Saratoga Springs to pass reasonable ordinances, by-laws, and regulations regulating, restraining, and licensing hackmen, to fix the amount to be paid for a license, and to prohibit any hackman from carrying on such business in the village without a license, and to issue the same, the village street commission authorized to issue such licenses had power to revoke a license so issued, for the licensee's breach of a regulation governing his business.

3. SAME—EVIDENCE.

Where a licensed hackman drove his vehicle up and down one of the principal streets of the village, going slowly, looking from side to side as he drove, and while so driving a man on the sidewalk beckoned to him, whereupon he was taken as a passenger for hire to a certain place, and on returning the hackman again continued to drive up and down the street from side to side, passing the leading hotels of the village, such facts justified a finding that he thereby violated Laws 1902, p. 1216, c. 506, § 40, prohibiting any hackman from driving through the streets of a village soliciting patronage, and authorized the revocation of his license.

Certiorari by the people, on the relation of George A. Van Norder, to review proceedings of the sewer, water, and street commission of the village of Saratoga Springs revoking relator's license as a hackman in said village.  Determination affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

T. F. Hamilton, for relator.
Joseph P. Brennan, for respondents.

CHESTER, J.  The relator was a licensed hackman in the village of Saratoga Springs.  By section 40 of chapter 506, p. 1216, of the

Laws of 1902, it is made unlawful for any hackman to "permit any horse or vehicle to stand in any public street of said village for hire, or to walk or drive through the streets soliciting patronage." The relator was charged before the president of the sewer, water, and street commission of the village with a violation of this law, and with a violation of the condition on which his license was issued. After a hearing the charges were sustained, and the relator's license .revoked. The purpose of this writ is to review that determination.

It is urged by the relator that the law under which he was licensed, and pursuant to which his license was revoked, is counter to section 6 of article 1 of the state Constitution; the claim being that he has been deprived of his property without due process of law. It seems to me a complete answer to this contention is that the relator has no legal right to conduct his business in a public street, except he does so under a lawful license authorizing him so to do. The law in question does not prohibit the relator from engaging in the occupation of a hackman, but simply lays down salutary rules, prohibiting his soliciting patronage as such hackman in the public streets. The Legislature has the supreme control of the streets and public highways, and has the right to regulate and restrict their use. People v. Kerr, 27 N. Y. 188, 192. In Cohen v. The Mayor, etc., of New York, 113 N. Y. 537, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, which was a case involving the question of the right of a municipality to permit the storage of a wagon in a public street, Judge Peckham, writing for the court, said:

"The primary use of the highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose. * * * It is no answer to the charge of nuisance, that, even with the obstruction in the highway, there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture. If it be permanently or even habitually in the highway, it is a nuisance. The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the king's highway is not to be used as a stable yard, and a party cannot eke out the inconvenience of his own premises by taking in the public highway."

The law in question here was clearly one for the protection of the public, and to secure to them the uninterrupted use of the streets of the village, free from interference by hackmen, either in obstructing the streets with their unemployed vehicles, or by their importunities or solicitations for patronage.

When the Legislature gave to the municipality the right to license hackmen under certain restrictions and conditions, the act was a lawful exercise of legislative power. In order to enjoy the benefits of the license so authorized, the licensee is bound to comply with the lawful restrictions imposed as a condition of issuing the license. The license to this relator was issued by the commission, as the authorized agents of the village of Saratoga Springs, and was accepted by the relator subject to all the laws of the state, and the ordinances of the commission and of the village regulating the use of the streets, and contained a proviso that a violation of any of its conditions would result in its for-

feiture.   One of such ordinances provided for two hack stands, which were maintained by the village pursuant to the ordinance, where licensed vehicles might stand while waiting for employment; and one of the conditions fully set forth in the license was that the relator should not "permit any horse or vehicle to stand in any public street in the village for hire, or to walk or drive through the streets soliciting patronage."   He was charged with violating that condition.   If that charge was true, it was a breach of the contract under which he received his license, and, under the terms thereof, it was forfeited. So, also, if it was true, there has been no interference with any of the rights of the relator, constitutional or otherwise, except such as he expressly agreed might be interfered with in case he violated any of the conditions under which his license was issued to him.   It is urged, however, that the relator had an absolute right to a license, upon his paying the stipulated charge therefor, and that the commission had no discretion in the matter of issuing it, and therefore they had no right to impose the condition named in the statute, or to revoke the license for its violation; but that is evidently not so, as this commission are given the power, under the law, to establish such ordinances, by-laws, and regulations as they shall deem proper and reasonable to regulate, restrain, and license all hackmen engaged in carrying passengers for hire, to fix the amount to be paid for a license in each case, and to prohibit any hackman from carrying on any such business in the village without having previously obtained a license (Laws 1902, p. 1202, c. 506, § 9, subd. 23), and to issue such license (Laws 1902, p. 1217, § 41, as amended by Laws 1903, p. 465, c. 192).   Under similar statutes, it has been held that the person or board authorized to issue the license was clothed with a discretion to grant or refuse it.   People ex rel. Schwabb v. Grant, 126 N. Y. 473, 27 N. E. 964; Matter of Armstrong v. Murphy, 65 App. Div. 126, 72 N. Y. Supp. 475; People ex rel. Houston v. Mayor of New York, 7 How. Prac. 81.   The case of People ex rel. Osterhout v. Perry, 13 Barb. 206, is cited in support of the contrary doctrine; but, as has been said, that case "is deemed quite doubtful as an authority, in view of the later cases on the subject." People ex rel. Cumisky v. Wurster, 14 App. Div. 556, 43 N. Y. Supp. 1088.   I think, therefore, that the relator had no property right which gave him the privilege to carry on business as a hackman in the streets of the village of Saratoga Springs without a license, and, having accepted a license upon a condition that he should not solicit patronage in the public streets, a violation of that condition properly resulted in a forfeiture of his license in accordance with its terms.

Upon the question as to whether or not he violated the condition, there was presented a clear question of fact for the determination of the president of the commission.   It was shown that the relator on the 4th day of September, 1903, from about 2 o'clock to about 3:05 o'clock in the afternoon, with two horses hitched to a surrey, drove up and down Broadway, in the village of Saratoga Springs, going slowly, looking to the right and to the left as he drove; that at five minutes after 3, while he was thus driving, a man on the sidewalk beckoned to him, and he turned into the curb, took him into his surrey, and drove away with him; that he returned with such person in about 10 minutes,.

and received 50 cents fare from him; and that from that time until 5:30 o'clock he again continued to drive slowly and continuously up and down Broadway, looking on either side as he drove. The place where he drove was in the heart of the village, passing in front of the leading hotels. The act of soliciting patronage may be evidenced quite as well by conduct as by word of mouth. The mere fact that he was driving during so long a period upon a busy thoroughfare, looking along as he went, to the sidewalks and the hotels, with his licensed surrey, and taking up a passenger whom he found upon the street, was quite sufficient evidence to justify the conclusion on the part of the president of the commission that he was engaged in soliciting patronage in violation of the statute and of his license. We think, therefore, we should not disturb the conclusion of the president of the commission as being against the evidence or the weight of evidence.

The determination should be confirmed, without costs. All concur.