THE PEOPLE *ex rel.* John J. Healy, State's Attorney, *et al.*

*v.*

THE CLEAN STREET COMPANY *et al.*

*Opinion filed February 21, 1907.*

1. MUNICIPAL CORPORATIONS—*city's control over streets cannot be delegated.* A city council has control over its public streets and full power to keep them clean, but it cannot delegate its power to any of its officers nor any individual or corporation, nor has it the right, even by ordinance duly passed, to appropriate the use of portions of the street for the benefit of private persons.

2. SAME—*when ordinance relating to street cleaning is invalid.* An ordinance authorizing certain officials of the city to take such steps as they might deem effective to prevent casting of litter upon the streets, to provide for erection in the streets of suitable boxes for such litter and to provide for the cleaning out of such boxes, and to enter into any contract, for a term not to exceed fifteen years, for the purpose of accomplishing such object, is invalid, as a delegation of discretionary power to such officials.

3. SAME—*city cannot contract for use of street cleaning boxes for advertising purposes.* A contract, based upon an ordinance, giving an individual full control and authority over the outside surface of boxes placed in the street as receptacles for litter and authorizing him to rent or sell the space for advertising purposes at such prices as he might see fit, accounting to the city for a certain per cent of his profits, is invalid, as turning over the exclusive use of portions of the street for the benefit of private individuals.

4. SAME—*an ordinance in conflict with constitution is void.* An ordinance attempting to confer upon private individuals or corporations the special privilege of using the public streets and sidewalks

for advertising purposes is void, as in violation of section 22 of article 4 of the constitution.

5. APPEALS AND ERRORS—*the Supreme Court has jurisdiction of direct appeal where constitutionality of ordinance is involved.* The Supreme Court has jurisdiction of a direct appeal in a proceeding wherein the validity of an ordinance is involved if the determination of its validity involves a construction of the constitution.

APPEAL from the Circuit Court of Cook county;, the Hon. THOMAS G. WINDES, Judge, presiding.

This is a bill filed in the circuit court of Cook county by the People, upon relation of John J. Healy, State's attorney, and John J. Healy, State's attorney, upon the relation of Ralph Clarkson, against the Clean Street Company, (a corporation,) the city of Chicago and George H. Jenney.

The bill alleges, in substance, the following facts: On November 22, 1897, the city council of Chicago passed an ordinance purporting to authorize the mayor, the chairman of the finance committee and the commissioner of public works to take such steps as they might deem effective to prevent the casting or leaving upon the streets and public places of the city of waste paper and other litter, in violation of the ordinances of the city. It authorized these officials to cause to be erected and maintained at convenient and suitable places upon said streets, alleys and public places, suitable boxes for the collection and temporary depositing of such waste paper and other articles of litter. It further provided that no contract for a period longer than fifteen years should be entered into, and that no action should be taken by which expense or liability to pay on the part of the city, in and for the erection or maintenance of any such boxes or receptacles, should be incurred. An advertisement was inserted in the official newspaper of the city calling for proposals for the collecting and removing of waste paper and litter from the streets. The advertisement was published only five times, whereas the ordinances pertaining to powers in reference

to contracting require a publication for ten consecutive days, except in cases where the expense for the public improvement does not exceed the sum of $500, and except that a contract might be entered into by a vote of two-thirds of all the aldermen elected without advertising for bids. The ordinance was passed by more than a two-thirds vote of the council. . Thereafter bids were received, including one from George H. Jenney. Upon the same day the bids were made, by arrangements between Jenney and the commissioner of public works, the bid of Jenney, without any re-advertising, was modified as to the compensation to be paid the city and the length of time for which the contract was to run. After such modification the bid was accepted, and on the 27th day of May, 1898, a contract was entered into between Jenney and the city,—the city being represented in said contract by its mayor, the chairman of the finance committee and the commissioner of public works,—in and by which contract it was provided that Jenney be given, for a period of ten years, the privilege of placing upon the highways of the city, at street intersections and at other convenient and suitable places, not less than four thousand boxes, to be and remain his exclusive property during the period, and to be in size not less than three feet six inches long, twenty inches wide and fifteen inches deep, and if Jenney wished to have said boxes or receptacles in excess of said size, the approval of the commissioner of public works should first be obtained. Jenney and his assigns were further given the sole and exclusive right to utilize and employ for advertising purposes any space upon the boxes, except such space on each of them as was used for the number of the box and the sign, "City Waste Box," and were authorized and given the exclusive right, during the life of the agreement, to contract for and publish advertising upon the boxes and to collect the proceeds of such advertising, except so much thereof as was to be paid to the city under the contract. In consideration of these privileges Jenney agreed, during the continuation

of the contract, to allow waste paper and other litter to be placed in the boxes and to remove the same therefrom without cost to the city, and to pay to the city, during said period, a portion of the money collected by him from his patrons for the privilege of having their advertisements placed upon his boxes. In cases where the boxes were erected outside of the principal business portion of the city it was provided that the places on said highways where the boxes were to be erected should be convenient and suitable and approved by the commissioner of public works.

Permission to assign the contract to the Clean Street Company, a corporation, was given by the mayor, commissioner of public works and chairman of the finance committee, and the assignment was thereafter made. Acting under the contract, about one thousand metal boxes, fifty inches high, twenty inches wide and twenty-six inches deep, were placed upon various streets of the city. It is claimed that the size of the boxes so placed was approved by the commissioner of public works. All of these boxes have remained upon the sidewalks ever since they were so erected. The outer surfaces of each and all of them, except the space used on each for the number of the box and for the sign, "City Waste Box," have been used continually for the purpose of advertising the private business of individuals and corporations, and Jenney and the Clean Street Company have at all times sold or rented, and still continue to sell or rent, space upon the outer surface of the boxes to such corporations and persons as wish to purchase or rent the same. It is also the intention and design of Jenney and the Clean Street Company to further increase the number of the boxes, and to place additional boxes at other points on the sidewalks, as rapidly as the same can be made profitable to them by using the outer surfaces thereof for similar advertising of private business. On March 25, 1901, the city council adopted a resolution purporting to modify the former contract so as to give the mayor the discretion to allow the

holders of said contract to place printed, engraved, lithographed or stamped paper and advertising signs on said boxes, in lieu of the provision in the original contract.

It is further alleged in the bill that said boxes are an obstruction to the free use of the sidewalks and streets and an encroachment thereon; that it is unlawful for the city, directly or indirectly, to engage in the business of advertising, or to pass any ordinance or to make any contract allowing the use of its streets or sidewalks, or any structure or thing therein, to be used for the business of advertising; that it is unlawful for the city to delegate a part of its duty to clean its streets and to pay for said services by allowing private individuals to encroach upon the public highways for the purpose of placing advertisements thereon for private profit; that said ordinance and said contract are null and void; that said boxes are public nuisances and interfere with the free use and travel upon said streets; that said ordinance and said memorandum of contract and the resolution of the city council are in conflict with section 22 of article 4 of the constitution of the State of Illinois, which prohibits special legislation granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever; that the allowing and permitting of said advertisements have caused and will cause great and irreparable damage to the city, and if recognized as a lawful use of said streets will be a precedent dangerous to the interests and welfare of the public. The prayer was that the contract be declared void and that the boxes be declared a nuisance and purpresture and ordered removed from the streets.

The answer of Jenney and the Clean Street Company alleges an expenditure of more than $10,000 for the manufacture of one thousand metal boxes, and that said boxes were placed upon certain street corners of the city after receiving the approval of the commissioner of public works; that in addition to said sum, Jenney and the Clean Street Company have expended over $40,000 for the purpose of

gathering from said receptacles and disposing of the waste paper, litter and refuse placed therein, and have also paid to the city the sum of $15,000 as compensation, under the terms of said contract; that said boxes and receptacles have been of great assistance in keeping off of the public highways the waste paper and refuse of various kinds, which is unsightly, unclean in character and a detriment and danger to the health and comfort of the citizens; that prior to the making of said contract, officials of the city, co-operating with citizens, attempted to provide receptacles for waste paper and refuse in order to promote the cleanliness and health of the inhabitants; that an attempt was made by private subscription to secure the collection of such waste paper and refuse and subsequent removal and disposition thereof; that the private citizens and associations finally neglected and failed to provide means for collecting, depositing and removing said waste paper and refuse, wherefore the said boxes became filled with noisome and offensive refuse, thereby endangering the health of the inhabitants of the city; that by numerous ordinances the city had provided that no person should throw refuse or waste paper upon the streets, but said city provided no receptacles in which to place such waste paper and refuse; that it was the common practice of the citizens to throw waste paper and refuse upon the streets and sidewalks; that the boxes provided by the civic federation and individuals interested therein were impracticable as such receptacles, and that during several years the authorities had been casting about to find some means whereby the city could be rid of the nuisance thus created; that the ordinance, advertisement and contract in question were the results of the efforts in this direction; that the respondents had taken from said boxes by them so placed upon the streets all sorts of refuse, to the amount of five or six tons per day; that the advertisements placed upon the said boxes were neat, artistic and appropriate; that said receptacles or boxes are the best means

yet found or tried to keep city streets clean and free from such refuse matter; that said type of boxes has met with general approval in the city of Chicago and various other cities of the United States; that improvement associations, teachers in public schools and persons controlling public and *quasi* public institutions have on numerous occasions requested the commissioner of public works to procure Jenney and the Clean Street Company to place boxes at particular locations on particular street corners which were without and beyond the general territory contemplated by said ordinance, for the purpose of permitting said associations and individuals to place therein the waste paper and refuse gathered by said associations. The respondents deny that said ordinance and contract are null and void and that said boxes are nuisances. They allege that the contract and ordinance clearly fall within the police power of the city for the preservation of the health and comfort of the citizens thereof; deny that said ordinance and contract are in conflict with section 22 of article 4 of the constitution of the State of Illinois, and allege that the allowing of such boxes does not lower the standard of the city or produce a distinct injury to the citizens thereof.

The answer of the city contains substantially the same allegations as that of the other respondents.

A stipulation of facts was entered into between counsel for the respective parties, which is embodied substantially in the pleadings as above stated.

Upon a hearing the bill was dismissed for want of equity. To reverse that decree this appeal has been prosecuted.

JOHN J. HEALY, State's Attorney, (WEST, ECKHART & TAYLOR, of counsel,) for appellants:

Legislative powers are conferred upon municipal corporations for public purposes and cannot be delegated to executive officers. *Chicago* v. *Trotter,* 136 Ill. 430; *East St. Louis* v. *Wehrung,* 50 id. 28; *Wilder* v. *Traction Co.* 216 id. 493;

*Lindblad* v. *Board of Education,* 221 id. 261; *Cairo* v. *Coleman,* 53 Ill. App. 680; *Hickey* v. *Railroad Co.* 6 id. 172; Dillon on Mun. Corp. (3d ed.) secs. 96, 97; *Chicago* v. *Stratton,* 162 Ill. 494; Cooley's Const. Lim. (5th ed.) 249.

Municipalities have no power to grant exclusively for private use advertising privileges in the public streets. A resolution pertaining exclusively to such a grant is void. *Snyder* v. *Mt. Pulaski,* 176 Ill. 397; *Field* v. *Barling,* 149 id. 556; *Smith* v. *McDowell,* 148 id. 51; *Railroad Co.* v. *Railroad Co.* 184 id. 588; *Ligare* v. *Chicago,* 139 id. 46; *Corcoran* v. *Railroad Co.* 149 id. 291; *Tompkins* v. *Pallas,* 95 N. Y. Supp. 875; *McNamara* v. *Willcox,* 73 App. Div. 461.

Municipalities have no power to grant rights or privileges in public streets for a private use inconsistent with the use for which such streets were dedicated and are held in trust by the city for the public. *Pennsylvania Co.* v. *Chicago,* 181 Ill. 289; *Morrison* v. *Hinkson,* 87 id. 587.

To subject the public streets to private advertising, even when connected with a public function, is to subject them to a private purpose, and is unlawful. *State* v. *St. Louis,* 161 Mo. 371; *Tompkins* v. *Pallas,* 95 N. Y. Supp. 875; *McNamara* v. *Willcox,* 73 App. Div. 451.

JAMES HAMILTON LEWIS, Corporation Counsel, and WINSTON, PAYNE & STRAWN, (JOHN BARTON PAYNE, MACLAY HOYNE, and M. F. SULLIVAN, of counsel,) for appellees:

The city of Chicago has power to place the receptacles in question upon its streets because of the control over its streets granted to it by the legislature. City and Village act, art. 5, sec. 63; *McWethy* v. *Light Co.* 202 Ill. 218; *Summerfield* v. *Chicago,* 197 id. 270; *Snyder* v. *Mt. Pulaski,* 176 id. 397; *Gundling* v. *Chicago,* 176 id. 340; *Lumber Co.* v. *Cicero,* 176 id. 9; *Hibbard* v. *Chicago,* 173 id. 91; *Shields* v. *Ross,* 158 id. 214.

The joining of a private use with a public use of an obstruction in a street, duly authorized by proper legislative authority, will not constitute a nuisance or a purpresture. *McWethy* v. *Light Co.* 202 Ill. 218; *Summerfield* v. *Chicago,* 197 id. 270; *Gregsten* v. *Chicago,* 145 id. 451; *Gas Light Co.* v. *Town of Lake,* 130 id. 42; *Quincy* v. *Bull,* 106 id. 337; *Railroad Co.* v. *People,* 92 id. 170; *Dickson* v. *Light Co.* 53 Ill. App. 379.

The city of Chicago has the right to license obstructions in its streets. *Summerfield* v. *Chicago,* 197 Ill. 270; *Snyder* v. *Mt. Pulaski,* 176 id. 397; *Hibbard* v. *Chicago,* 173 id. 91; *Smith* v. *McDowell,* 148 id. 51; *Gregsten* v. *Chicago,* 145 id. 451; *Gas Light Co.* v. *Town of Lake,* 130 id. 42; *Quincy* v. *Bull,* 106 id. 337; *Railway Co.* v. *People,* 91 id. 251.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first question for our determination is the validity of the ordinance which is the basis of the contract entered into between the city and Jenney. It is claimed by appellants that it is void because it seeks to delegate to the mayor, chairman of the finance committee and commissioner of public works discretionary power which is vested solely in the city council.

Section 62 of the City and Village act authorizes city authorities to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds and vacate the same; to plant trees upon the same; to prevent and remove encroachments or obstructions upon the same; to provide for the cleansing of the same; to regulate the use of sidewalks and all structures thereunder, and to require the owner or occupant of any premises to keep the sidewalks in front of or along the same free from snow and other obstructions; to regulate and prevent the throwing or depositing of ashes or garbage, or any offensive matter, in, and to prevent injury to, any street, avenue, alley or public ground.

It will be seen that the control over the streets and alleys of a city or village, under this statute, is very broad, and absolute power over them is vested in the municipality. But the authority is not vested in the mayor, chairman of the committee on finance or commissioner of public works, but is conferred upon the legislative branch of the city government. In other words, it is vested in the city council, and can only be exercised by it through ordinances duly passed. The ordinances may, of course, be enforced or carried into effect after they are so passed, by the mayor or other officials designated for that purpose. It is a well known rule of law that the city council cannot delegate to any of its officers discretionary authority which is vested by statute or charter in it. In the American and English Encyclopedia of Law, (vol. 20,—2d ed.—p. 1217,) the rule is announced as follows: "The governing body of a municipal corporation is not at liberty to delegate to a committee, or an officer or agent, governmental, legislative or discretionary functions confided to it by the legislature of the State, in the absence of express authority for such delegation." To the same effect see Cooley's Const. Lim. (5th ed.) p. 249, and Dillon on Mun. Corp. (3d ed.) secs. 96, 97.

The question has been before this court on many occasions and uniformly decided in conformity with the rule above stated. In the early case of *City of East St. Louis* v. *Wehrung*, 50 Ill. 28, the charter of the city of East St. Louis conferred upon the city council power to regulate the selling of spirituous liquor. The council passed an ordinance prohibiting the sale of spirituous liquor, under penalty, without a license, and the city treasurer was authorized to grant the license, to fix the amount to be paid therefor, and, with the concurrence of the mayor, to reject any application for the same, and in the decision of the case on this point we said (p. 31): "The ordinance under which this proceeding was instituted delegates to the treasurer of the city the power to determine the amount that each applicant for a license shall

pay, not less than $50 for six months.   As a general rule, where power is conferred upon a municipal corporation to regulate any calling or business they are powerless to delegate a discretionary authority to others or to an individual. In creating such bodies it is designed to aid the government in the preservation of good order, and to protect more effectually persons in the particular community from injuries and annoyances that cannot be so readily guarded against by the general laws of the State.   And in conferring the power upon the corporate body it is with the intention that it shall be exercised by the body created and in the mode prescribed, and any departure from such auhority or any attempt by the body to transfer their powers to others is unwarranted. * * * If the treasurer may, under this ordinance, refuse licenses with the concurrence of the mayor, then they, and not the city council, would regulate or suppress dram-shops; and if the treasurer may, in his discretion, fix the sum to be paid, then he, and not the city council, would discharge the duty." To the same effect, see *City of Chicago* v. *Stratton,* 162 Ill. 494; *People* v. *McWethy,* 177 id. 334; *Lindblad* v. *Board of Education,* 221 id. 261; *Wilder* v. *Aurora Electric Traction Co.* 216 id. 493.

This ordinance authorized the three city officials therein named, or a majority of them, to take such steps as they might deem effective to prevent the casting of waste paper and other litter upon the streets, in violation of the existing ordinances of the city, and to take such action as they might deem proper for the erection upon the streets of suitable boxes for the collection of such litter, and to provide for the cleaning of and keeping clean such boxes, and to enter into any contract, for a term not to exceed fifteen years, for the purpose of accomplishing said object.   An ordinance could not well be drawn giving greater power and authority to a set of officials than was done by this one.   By its terms the officials were not even given general directions as to the manner in which they were to exercise the power conferred

upon them. The only limitations were, that the contract was not to be for a longer period than fifteen years and that the city was not to be made liable to pay for the erection or maintenance of the boxes. Outside of these limitations the officials were authorized to place obstructions in the street at any places they might see fit, of any size or any character. It cannot be seriously contended that this was not a governmental and legislative function delegated to the city council by virtue of section 62, *supra,* and such power as the city council was only authorized to exercise by virtue of an ordinance properly passed, providing for at least the general conditions under which the work should be done. The city council had control over its streets and alleys, with full power to keep them clean. But that power and duty could not be delegated to others. The defense, therefore, that the method adopted by the city of Chicago for disposing of the waste paper and other rubbish accumulating upon its streets was the most practicable and effective means of so doing, and all of the argument based on that defense, cannot avail against the express provisions of the statute and the firmly established rule above set forth, and, however potent it might be if addressed to the legislature, can have no controlling influence upon our decision. The ordinance was void, and the trial court should have so held.

We find nothing in the case of *Savage* v. *City of Salem,* 23 Ore. 381, to which our attention has been called since the submission, which militates against this conclusion.

The contract entered into with Jenney was to run for a term of ten years, unless sooner terminated, and it rested upon the said ordinance. It, the contract, provided that he should have full control and authority over the outside surface of the boxes, and might rent or sell it for advertising purposes to any one he saw fit, the only limitation upon that right being that no advertisement should appear upon the boxes which was of an immoral or disreputable character. He was permitted to charge for such advertise-

225—31

ments such prices as he might see fit, but was to account to the city for a certain portion of the amount received. By this contract he was authorized to use the streets and public places of the city for the purpose of advertising the private business of any person or corporation and have exclusive control over the same. The city authorities had no power to grant or delegate any such right or privilege. While the title to the streets and alleys of a city is vested in the city and it has full power and control over them, yet this authority must be exercised according to well established rules of law. The public authorities are merely the custodians or trustees for the public, which must be given the full use and enjoyment of all such streets without obstruction, and without authority of the city council to use or encroach upon them, or authorize others to do so for purely private purposes. By the ordinance and contract the city authorities sought and attempted to turn over the use of certain portions of the street for the exclusive benefit of private individuals, and their action in this regard must be held illegal and void.

In the case of *State* v. *City of St. Louis*, 161 Mo. 371, the question here involved was before the Supreme Court of that State and the foregoing view sustained. In that case it appears that the municipal assembly of the city of St. Louis passed an ordinance purporting to authorize the board of public improvements to maintain boxes similar to those in question, and to enter into a contract with Fred R. Belt for the erection and maintenance of the same. Belt was to have the right to use the outside of all boxes for advertising purposes, and was to pay into the city treasury, at the end of each quarter, fifteen per cent of the gross receipts. The principal controversy was as to the authority of the municipal assembly or the board of public improvements under the charter, in disposing of which the court, among other things, said: "But there is another view to be taken of this ordinance. It subjects the public streets to a purely private purpose, to-wit, the advertising of the individual busi-

ness and enterprises. Can the city devote its streets to such purpose? We hold that it cannot. The charter gives the city power to regulate the use of the streets. Under this grant it may, it is true, not only regulate the travel thereon, but it may allow gas, water and sewer pipes to be laid therein and permit telegraph and telephone poles to be erected therein. But all of these uses are consistent with the use for which they are dedicated or condemned. * * * Referring now to the ordinance, it will be observed that it confers upon Belt the exclusive right to place advertisements on such boxes for the benefit of himself and his assigns. In a word, the city has attempted to farm out its sidewalks and streets to a private person for advertising. Belt is free to make his own charges for advertising. No power is reserved to the city, even if it were a purpose to which it could devote the streets, to regulate the charges for advertisements. * * * But it is said that it is no objection to a public franchise that its owner may derive a private gain therefrom. This is unquestionably true when the use is public and the gain arises out of that use, such as street cars, telegraph and telephone lines. In this case, however, the pecuniary profits to Belt arise from a source wholly distinct from any public use. They will not flow naturally from his right to erect and maintain boxes for waste paper, but solely from a distinct privilege in which the public are not interested, to-wit, his exclusive right to use the streets for advertising purposes, and purely provide a collateral enterprise. We are clear that the streets cannot be devoted to such a private purpose."

The foregoing reasoning and conclusion are, in our opinion, unanswerable. The ordinance in this case, which is the basis of the contract, and the subsequent resolution of the city council, clearly attempt to confer upon George H. Jenney and the Clean Street Company the special privilege of using the public streets and sidewalks for advertising purposes. Section 22 of article 4 of the constitution of 1870 forbids any such ordinance, contract or resolution.

Other questions are presented and discussed, such as whether the boxes are a nuisance, whether they are purprestures, and whether or not a court of equity will assume jurisdiction of the cause before they have been declared to be a nuisance by a jury. No good purpose would be served in considering these points, as the questions already considered, in our opinion, are conclusive of the case and must determine it contrary to the finding of the trial court.

Some doubt was expressed at the oral argument whether the appeal was properly taken directly to this court. No such point is made by counsel for appellees in their printed briefs and argument, but as the question goes to our jurisdiction we have given it consideration. The ground upon which the appeal was taken to the Supreme Court doubtless was that it involved the validity of said ordinance and resolution of the city council, and the contract, under the provisions of the constitution. It is provided by section 22 of article 4, *supra,* of the constitution, that the General Assembly shall not pass a law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. Ordinances of municipal corporations must be in harmony with the constitution, and if in conflict therewith they are void. (*Hibbard & Co.* v. *City of Chicago,* 173 Ill. 91.) If the validity of an ordinance involves a construction of the constitution, this court has jurisdiction on direct appeal, under section 88 of the Practice act. (*Wood* v. *City of Chicago,* 205 Ill. 70, and cases cited; *People* v. *Harrison,* 223 id. 540.) The appeal was properly taken from the circuit court directly to this court.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in accordance with the views above expressed.        *Reversed and remanded.*