GREENE v. CITY OF SAN ANTONIO et al.
(No. 5545.)

(Court of Civil Appeals of Texas.   San Antonio.   June 9, 1915.   On Motion for Rehearing, June 28, 1915.)

1. MUNICIPAL CORPORATIONS ☞661—STREETS —REGULATIONS.
The streets in cities are under the paramount control of the Legislature, which may confer on the cities exclusive control over them, and when that is done, a city may impose reasonable conditions on the right to use the streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434–1436; Dec. Dig. ☞661.]

2. MUNICIPAL CORPORATIONS ☞661—STREETS —REGULATIONS.
A regulation by the Legislature, or by a city to which exclusive control of the streets has been conferred, of the use of streets must, to be valid, be reasonable as measured by the necessity of the occasion and the rights of the public.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434–1436; Dec. Dig. ☞661.]

3. MUNICIPAL CORPORATIONS ☞661—USE OF STREETS—REGULATIONS.
A city having the exclusive control over its streets may prohibit the prosecution of a private business on a street, or grant a privilege to conduct a business thereon.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434–1436; Dec. Dig. ☞661.]

4. MUNICIPAL CORPORATIONS ☞703—USE OF STREETS—REGULATIONS—VALIDITY — "CARRIER OF PASSENGERS."
One conducting a jitney business on streets is a carrier of passengers for hire, and the city having exclusive control over its streets may adopt reasonable regulations and require a bond for protection of citizens.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1509–1513; Dec. Dig. ☞703.

For other definitions, see Words and Phrases, First and Second Series, Carrier of Passengers.]

5. CONSTITUTIONAL LAW ☞208—CLASS LEGISLATION—USE OF STREETS.
A city ordinance, which applies to all persons using the streets of the city to operate a vehicle in local street transportation, is not invalid as class legislation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig §§ 649–677; Dec. Dig. ☞208.]

6. MUNICIPAL CORPORATIONS ☞680, 681 — USE OF STREETS—"FRANCHISE."
A city, authorized by its charter to grant franchises for the use of its streets for public purposes, may grant a franchise for the operation of jitneys for local street transportation, a "franchise" being a privilege not belonging to an individual or corporation as of right, but conferred by a sovereign or government on, and vested in, individuals or corporations.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. ☞680, 681.

For other definitions, see Words and Phrases, First and Second Series, Franchise.]

7. MUNICIPAL CORPORATIONS ☞703—REGULATION OF BUSINESS—CHARTER AUTHORITY.
A city authorized by its charter to license and regulate trades and business carried on in the city has power to regulate the operation of jitneys, using the streets for local street transportation, and to require a bond by operators for the protection of citizens.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1509–1513; Dec. Dig. ☞703.]

On Motion for Rehearing.

8. CONSTITUTIONAL LAW ☞303—DUE PROCESS OF LAW—ORDINANCES—VALIDITY.
An ordinance of a city regulating the operation of jitneys using streets for local transportation and requiring operators to give a bond for the protection of citizens, does not deny due process of law merely because it provides for a forfeiture for certain infractions of the ordinance.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 863–866; Dec. Dig. ☞303.]

9. LICENSES ☞6—USE OF STREETS—JITNEY BUSINESS.
A city having exclusive control of its streets, with power to grant franchises for their use, and to license trades and business, may prohibit the use of streets for the private business of one operating a jitney as a common carrier of

passengers, or may give permission for such use and compel the payment of a license fee.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 5, 6, 19; Dec. Dig. ⇐6.]

**10. MUNICIPAL CORPORATIONS ⇐680, 681— FRANCHISES—POWER TO GRANT.**

A city charter, authorizing the granting of franchises for the use of streets for a public purpose, covers any franchise subject to the limitation that it must be made in the interest of the public, and the authority conferred is not confined to granting franchises only to individuals and corporations granted a designated right of way.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. ⇐680, 681.]

**11. LICENSES ⇐1—REGULATION OF STREETS— "OCCUPATION TAX."**

Under a city charter authorizing the city to license trades and business, and charge license fees which shall not be construed as occupation taxes, a license fee, imposed for the use of streets for jitneys as carriers of passengers, is not an occupation tax.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 1; Dec. Dig. ⇐1.

For other definitions, see Words and Phrases, First and Second Series, Occupation Tax.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by R. P. Greene against the City of San Antonio and others. From a judgment of dismissal, plaintiff appeals. Affirmed.

Bosshardt & Wicks and W. C. Church, all of San Antonio, for appellant. Geo. R. Gillette, Robt. G. Harris, and R. J. McMillan, all of San Antonio, for appellees.

FLY, C. J. The amended petition fails to disclose the names of the defendants, but merely refers to them as defendants who had been cited and appeared and answered, but by a reference to the general demurrer it is ascertained that it is signed by the attorneys for the city of San Antonio, Clinton G. Brown, mayor, and Fred Lancaster, chief of police. The suit was instituted to temporarily restrain the enforcement of a certain ordinance regulating the operation of street cars, jitneys, motor omnibuses, and other vehicles using the streets of San Antonio for local street transportation. It seems that a temporary restraining order was entered on March 27, 1915, and on May 19, 1915, the general demurrer was sustained to the petition, and the cause was dismissed, but under an agreement of the parties the restraining order was continued in force until June 9th, then to be dissolved.

[1] The highways of a state, including the streets in cities and towns, are under the paramount and primary control of the Legislature, and all powers of cities and towns over streets must depend upon the authority granted in special charters or general laws applying to such municipalities. Whatever power the state has over its highways can be granted by it to the municipalities it has created, and in this instance "exclusive control and power" over the streets, alleys, side-walks, and public grounds within its bounds have been granted to the city of San Antonio, not only in the special charter granted it, but by the general laws of the state. The streets do not belong to the city or town in which they may be situated, but all powers over them are derived from the Legislature by charter or statute. They are affected by a trust for the public use and benefit. The primary design in laying out and constructing streets is for the purpose of travel and passage for the public, and rights as to ingress and egress, nearly resembling private rights, are also given abutting owners. Having exclusive control over the streets, the Legislature, or those to whom it has delegated powers over streets, have the right and authority to impose reasonable terms and conditions upon the right to use them. Subject to rights of abutting owners, streets may be closed to all business traffic, the speed of vehicles regulated, obstructions may be prevented or removed, licenses to use the streets may be required, travelers may be required to obey the directions of the police, vehicles having heavy loads may not be permitted on certain streets, or be required to have wide tires, the weight of loads may be limited, and hacks may be compelled to remain at certain stands. These are only a part of the many regulations that have been held valid. Dill. Mun. Cor. §§ 1163–1167.

The only absolute right that the private individual has in the streets of a city, not including the abutting owner, is the right to convey himself or property from one place to another, and even that right may be regulated. The individual usually has the right to cross a street whenever he may so desire, but the municipality may prevent him from crossing at any place except corners, and under proper circumstances may prevent him crossing at all, as when there may be danger or when funeral or other processions may be passing. No individual has the inherent right to use a street or highway for business purposes. No man has the right to use a street for the prosecution of his private business, and his use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good. Not having the absolute right to use streets for the prosecution of private business, within the bounds of reason, where no discrimination is shown, persons or classes of persons may be controlled or regulated in the use of streets.

[2] This is a self-evident proposition, for, if it were not so, sidewalks and streets could be rendered impassable by those vending their wares or soliciting patronage. In advocating the rights of the individual, the principle should always be kept in view that in any form of civilized society, and especially in a government founded upon the will of the majority, natural rights, the exercise of which is deleterious and harmful to the rights, comfort, and happiness of the major-

ity, can and must be restrained or taken away. The price paid by every citizen for the right to enjoy the privileges and comforts of civilized life is the surrender of certain natural rights. The fewer natural rights that can be disturbed in the protection of the rights of society, the rights of the majority, points the way to the ideal government, but the wishes, the desires, the natural rights of the individual, must, in the highest form of government ever conceived by man, in some points clash with the rights of the majority, and the individual must surrender those rights to the public good. The more complex the affairs of men become, the more the natural rights of individuals must be infringed upon for the public good. There must inevitably be more regulation, more necessity for surrender of certain rights, in the crowded city than in the rural community, and to protect the rights of the public the Legislature is clothed with authority to enact and enforce such laws and regulations as may be necessary in each community. The validity of such regulations must be measured by the necessities of the occasion and the rights of the public. The regulation must be reasonable, but its reasonableness will be measured by public rights.

[3] It has been held time and again that cities have the authority to regulate or even to prohibit the prosecution of a private business on a street, and that such business cannot be engaged in lawfully without a grant of some character from the government. Whether the grant be denominated a franchise, a license, or a privilege would not matter, for the distinction is one in name and not in substance. Dill. Mun. Corp. § 1210, and notes. The author cited defines a franchise—

"to be a particular privilege which does not belong to the individual or corporation as of right, but is conferred by a sovereign or government upon, and vested in, individuals or corporations."

The right to solicit passengers and convey them for hire from one part of the city to another, as appellant does, is a privilege, a right, or a power, which he cannot exercise as of right, but its lawful existence must depend upon a grant whose character will not be changed by calling it a franchise, a privilege, or a license. The rights given could, with perfect propriety be named a franchise.

[4] It is not contended by any one that the city would have the right to prevent appellant from riding in his automobile on any street in the city, except under certain circumstances, for the streets were builded for that purpose, among others, but appellant is not only desirous of riding in his automobile on the streets of San Antonio, but he has established a business which he wishes to conduct on the streets without leave or license from the city, and without the payment of anything therefor. No one would contend that the city would be powerless to

protect itself from scores of fruit vendors who might stand upon the streets and seek for customers, and no reason would be necessary except that streets were constructed for use by the public, and not for the prosecution of a private business. Can it be said that rushing along the streets, stopping at curbs, and soliciting passengers and conveying them for a sum of money to different portions of the city is not a business? It is not only a business, but if the allegations of the petition be true, quite a lucrative one. If the peanut vendor, the pop corn seller, or the peddler can be regulated in his use of the streets, the mind can offer no reason why the "jitney" driver should not be regulated in his traffic on the streets.

But it is contended that the regulation must be reasonable. Let that rule be admitted, and where is the unreasonableness of the ordinance to be found? The drivers of jitney cars have placed in their charge and keeping the lives and persons of men, women, and children, and it would not only be unreasonable, but criminal, for the city to turn them loose on the streets unrestrained by any restrictions. Every owner of an automobile is required to obtain a license before he can use the streets and roads, and why should not the owner of a car who carries passengers for hire be required to obtain a license and be subject to inspection and regulation? If such vehicles are to be permitted on the streets, no valid reason can be given for not requiring them to serve the public to the best advantage, and as that will be attained by a regular route and regular schedule, they have been prescribed.

It is contended that a city is not authorized to require a bond for the protection of citizens, and certain authorities are cited to sustain the contention, but they fail to do so. In the case of Taylor v. Dunn, 80 Tex. 652, 16 S. W. 732, it was not held that the city of Austin could not require a bond that would inure to the benefit of third parties, but, on the other hand, the right to require such a bond is recognized. When the charter gave the exclusive control of the streets to the city of San Antonio, it necessarily gave it the authority to require reasonable conditions upon which use of the streets should be granted. By the grant of exclusive control of the streets, there was necessarily given, by implication, power to require of any one who desired to operate a dangerous agency upon the streets the giving of some guaranty for the protection of the lives and limbs of citizens. If the city has the right to the performance of certain conditions before a license to use the streets would be given, it could require any reasonable condition. The right of bodies politic to require bonds for the protection of third parties is recognized in the case of Nelson Co. v. Stephenson, 168 S. W. 61.

The jitney service of the country is of such recent date that there are but few cases

which have arisen in connection with its regulation, but regulation of such service is in no wise different from the regulation of any trade or business, or the running of stages or street cars on the streets, and decisions on those subjects are directly applicable to this new trade, occupation, or business of carrying people from one part of the city to another for five cents a person. As said in the Maine case of State v. Barbelais, 101 Me. 512, 64 Atl. 881, in regard to an ordinance prohibiting carrying on trade on a street without a license:

"The ordinance is not inconsistent with any provision, * * * and we are unable to perceive any unreasonableness in an ordinance, when reasonably construed, the object of which is to prevent the carrying on of trade or business in the public streets of the city. Upon the contrary, it seems to us to be a salutary regulation by the municipality as to the use of its public streets. Streets are located and constructed, and the private property of individuals taken therefor, by the exercise * * * of eminent domain, when necessary, for the public purpose of travel, and not that other individuals may use these streets for the private purpose of carrying on trade or business therein. * * * The purpose of this ordinance was to preserve the use of the streets in the city for the public purposes for which all streets and ways are constructed."

To the same effect are the cases of Nightingale, Petitioner, 11 Pick. (Mass.) 168, and Commonwealth v. Ellis, 157 Mass. 555, 33 N. E. 651.

In the case of the Fifth Avenue Coach Co. v. City of New York, 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas. 695, it was held that the right to run coaches on Fifth avenue was a franchise, and, further, that the city had the authority to grant or withhold the right to run coaches on the streets. The decisions in Hatfield v. Straus, 189 N. Y. 208, 82 N. E. 172, State v. St. Louis, 161 Mo. 371, 61 S. W. 658, and People v. Clean Street Co., 225 Ill. 470, 80 N. E. 298, 9 L. R. A. (N. S.) 455, 116 Am. St. Rep. 156, condemn conducting a private business in the street even where expressly authorized by the municipality, unless there is some corresponding benefit to the public.

In the case of Van Norder v. Sewer, Water & Street Commission, 90 App. Div. 555, 86 N. Y. Supp. 445, it was held that an ordinance, which prohibited hackmen from allowing any horse or vehicle to stand in any public street of the village for hire, or to walk or drive through the streets soliciting, was valid. The hackman in that case had his license forfeited for violating the provisions of the ordinance.

In the case of Wade v. Nunnelly, 19 Tex. Civ. App. 256, 46 S. W. 668, the Court of Civil Appeals of the Third District, in upholding an ordinance which prohibited the sale of country produce upon the streets, said:

"The ordinance in question does not undertake to prevent or interfere with the right of the appellees to purchase, sell, or otherwise deal in the products referred to upon their own premises; nor does it prohibit other persons from carrying such products and delivering them to appellees upon their premises. It may, and doubtless will, interfere with the privilege, formerly enjoyed by the public at large, of exhibiting such products upon the streets and in other public places within the territory referred to, and the convenience resulting therefrom to the appellees as dealers in such products. But appellees have no vested right to make marts of the streets, alleys, and other public places; and to deny them the privilege of so doing is not to destroy or deteriorate any of their property rights."

So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given. There could be no greater use of the streets for business purposes than that in which appellant is engaged. He must move swiftly along the streets, obstructing the passage, to some extent at least, of those who have a vested right to use the streets for passage, from point to point, he will, by building up and conducting his private business entirely on the streets, be wearing and wasting that which was primarily intended for the passage of persons along the streets, and to obtain these great privileges he must comply with the conditions fixed by the city of San Antonio. The conditions are reasonable, proper, and are promulgated in the interest of the general public.

[5] There is no discrimination or class legislation involved in the ordinance. It is made to apply to "any person whomsoever" who uses the streets "for the purpose of operating or causing to be operated thereon any vehicle engaged in local street transportation." The rule is that a law is general and uniform in its operation, and not open to attack on the ground of being class legislation, when it affects equally every one engaged in the same business. Receiver v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; Ins. Co. v. Chowning, 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504; State v. Railway, 100 Tex. 153, 97 S. W. 71.

[6] The city is duly authorized by its charter to grant franchises for the use of the streets and public places for public purposes alone, and were appellant not engaged in the public service of transporting passengers, the city would not be authorized to license his automobiles to carry passengers for hire. There can be no difference in granting a franchise to run cars on steel rails and to run them on the street surface. There can be no more reason for not exercising the same con-

trol over automobiles engaged in transporting passengers for pay than in supervising and controlling vehicles that can only move on metal rails. In fact there is greater inconvenience to traffic on the streets and more danger of accidents from numbers of automobiles dashing along at a high rate of speed in the hot quest for nickels than in cars confined to certain well-defined tracks. The ordinance does not indicate any desire upon the part of the city government to destroy or unnecessarily hamper the new mode of transportation, but it is merely exercising that regulation of it which experience has demonstrated must be applied to any individual or corporation serving the general public. Appellant's business is that of a common carrier, subject to the same liability and under the same obligations to the public as any other common carrier. Babbitt, Motor Vehicles, §§ 620, 621; Van Hoeffen v. Columbia Taxicab Co., 179 Mo. App. 591, 162 S. W. 694.

[7] Not only is the city of San Antonio given exclusive control of its streets, but it is given the power—

"to license, regulate and inspect all trades, professions, occupations, callings and business carried on in said city, whenever and wherever the council [now commissioners] shall deem such regulation, inspection and license necessary or proper for the good order, public health, public safety or general police regulation of said city, and charge license and inspection fees therefor, and such fees shall not be construed as occupation taxes."

That section of the charter, which was 99 in the aldermanic charter, has passed under the same number into the commission charter, and is full authority for every provision in the jitney ordinance.

The individual owner of an automobile pays a license to operate it in San Antonio, the speed at which he shall not go, the manner in which he shall place his car at the curbs, the time he is allowed to stay in certain places, the side of the street on which he shall operate his machine, the manner in which he shall sound his horn and turn corners, and various other restrictions are placed upon him, and the man or corporation can have no ground to complain that his business of common carrier on the streets is reasonably regulated. There can be no doubt of the legality, propriety, and reasonableness of the ordinance.

The judgment is affirmed.

### On Motion for Rehearing.

Reference of a San Antonio daily newspaper to some decision by some nisi prius court in Memphis, Tenn., is cited as an authority to the effect that the state or a municipality cannot require a bond to protect its citizens from damages incurred at the hands of a common carrier. This cannot be recognized by any appellate court as authority. The decision, if in fact it was made, of the Tennessee trial court, is in the face of a de-cision of the Supreme Court of the state of Washington, in which it was held:

"Now the act in question does two things of importance as legislative functions, viz.: (1) It recognizes a new sort of common carrier; and (2) it enacts a system of regulation of such common carriers. It is true that it does not limit the speed of such passenger cars, nor the number to be permitted on given streets, nor the capacity of the car, nor the routes, nor rules of the road. It does, however, regulate them to the extent of requiring them to obtain permits from the secretary of state to operate, and to furnish a surety bond in a specified amount to the approval of the licensing officer, with specified conditions therein and provides for civil actions to recover against the carrier and the bond for any injury occasioned by the negligence or unlawful act of such carrier." State v. Howell (Wash.) 147 Pac. 1159.

That language was held in regard to an act of the Legislature, providing that any person, firm, or corporation desiring to engage in the business of carrying or transporting passengers for hire in any motor propelled vehicle over and along any public street, road, or highway, in any city of the first class, should obtain a license and give an indemnity bond. The Washington court held the act constitutional saying:

"The reasonable regulation of common carriers by legislation has always been recognized as a proper exercise of the police power touching the safety and welfare of the public. No citation of authorities is deemed necessary to sustain the above statement in these terms. Whatever, therefore, may be the general effectiveness of this law as to regulating such common carriers, it certainly can be said with conviction that it is an attempt at such regulation. For instance, it may have the effect of limiting the number of such carriers upon the streets by the restraints put upon them; and it may conduce to the safety of passengers carried by such vehicles and others upon the streets by the restraints placed upon them. At all events, the body of the act certainly bears all the semblance of an attempted exercise of police power, and of coming within the excepted provisions of the seventh amendment to the Constitution."

The city of San Antonio is given exclusive control of the streets, and if the Legislature has the power to require a bond for the protection of the citizen against the negligence of common carriers along a street, the municipality to whom its powers have been delegated would have the same authority. "The power possessed by the state to attach as a condition to the grant of a franchise to a quasi public corporation the performance of duties beneficial to the public may be exercised by the municipality under a delegated power to grant to such a corporation the use of its streets." Dill. Mun. Corp. § 1229.

[8, 9] The state has assumed and exercised the right to forfeit titles to public lands by the stroke of a pen upon the part of the land commissioner, has authorized and enforced the right to forfeit liquor licenses by the comptroller, and these acts are held to be done in due course of law. How then can it be claimed that section 9 of the ordinance which provides for a forfeiture in case of certain infractions of the ordinance be held to be in contravention of the fourteenth or any

other amendment to the Constitution of the United States? The Supreme Court of Texas has held that a title to land was forfeited by the comptroller writing the words "Land forfeited" upon certain papers in his office. Brightman v. Comanche Co., 94 Tex. 599, 63 S. W. 857; Hoefer v. Robison, 104 Tex. 159, 135 S. W. 371. Can it be that the right to operate an automobile for hire in San Antonio is more sacred than the right of a family to a homestead? Has the owner of such automobile not had a day in court when he is given notice to appear before the city council to answer to charges as to violation of the conditions of his license, and is given the right to introduce witnesses and be heard in his defense? There is no merit in the contention. If the man whose license is forfeited is dissatisfied, there are ways by which he can carry the matter into the courts of the state. Appellant has no right or authority whatever to conduct his business on the streets of San Antonio and, in order to obtain permission to do so, must comply with the conditions prescribed by the municipality. Appellant desired to use the streets for private purposes of gain, and the city has the absolute right to prohibit the use of the streets for his private business, and in case it gave permission for such use had the right to compel the payment of a license fee.

While protesting that the ordinance was passed not to regulate, but to destroy, the new cheap transportation for the benefit of "intrenched interests," appellant loses sight of the fact that when he took up the occupation of a common carrier he became subject to the rules governing common carriers, and cannot contend that the same regulation should be applied to him that is applied to the individual riding in his private carriage or wagon or automobile on the street. There is nothing in the ordinance or in the record justifying the wholesale charge that the ordinance was passed in the interest of a certain corporation, and was intended to destroy rather than regulate the motor car services on the streets.

In the case of Hoefling v. City of San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608, the business being taxed was one that appellant had the right to engage in, at the place in which he desired to prosecute it, but in this appellant seeks to engage in a business on the streets which he has no right to engage in, and which could be absolutely prohibited by the city. The occupation of a common carrier on the streets of a city is not one like that of a grocer or druggist that can be engaged in at the will and pleasure of any one with the necessary means, and the occupation tax for which could not exceed one-half that levied by the state, but the "jitney" occupation is one that cannot be exercised except by the authority and under the conditions prescribed by the city.

[10] There is no strength or force in the contention that the city of San Antonio is not empowered to grant a franchise unless at the same time it grants a right of way, or, in other words, that a franchise cannot be granted except to a railway company. In section 101 of the charter of the city of San Antonio it is provided:

"Franchises for the use of the streets and public places of the city may be granted by the affirmative vote of four commissioners, but no franchise or privilege for the use of any of the public streets or other public places of the city shall ever be granted for any but a strictly public purpose, and any grant of a franchise or privilege hereafter made for the use of any of the public streets or other public places within said city, where from the nature of the case the use thereof would be private, or only colorably public, or chiefly for private purposes, shall be absolutely void."

That provision of the charter is broad enough to cover any franchise granted by the city, the only limitation being that it must be made in the interest of the public. That section is the one giving the authority to the city to grant franchises or privileges, and such authority is not confined to granting franchises only to individuals and corporations that are granted a designated right of way. Sections 103 and 104 speak of rights of way merely in connection with extentions of existing charters.

[11] The contention of appellant as to the license fee being an occupation tax was anticipated and fully disposed of by the Legislature in section 99 of the city charter, in which authority is given to charge license and inspection fees, and provides that "such fees shall not be construed as occupation taxes."

The motion is overruled.