(77 Misc. Rep. 576.)

PEOPLE ex rel. MOSES v. GAYNOR.

(Supreme Court, Special Term, New York County. September 10, 1912.)

1. THEATERS AND SHOWS (§ 3*)—LICENSES—DISCRETION OF MAYOR.

Under Code of Ordinances of New York City, §§ 305, 307, which require common shows, etc., to be licensed, and which provide that licenses shall be issued by the mayor, the granting of such license is discretionary, and not mandatory.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. § 3.*]

2. LICENSES (§ 1*)—DEFINITION.

A license is a permission to do something.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4133–4141; vol. 8, p. 7706.]

3. THEATERS AND SHOWS (§ 3*)—LICENSES—REFUSAL.

The mayor of New York City did not abuse his discretion, under Ordinances of New York City, §§ 305, 307, in refusing to grant a license to maintain a moving picture show immediately adjoining a public school and opposite the parish house and other buildings of a church.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. § 3.*]

Mandamus proceeding by the People of the State of New York, on relation of Sigmund Moses, against William J. Gaynor, Mayor of the City of New York. Motion for writ denied.

Philbin, Beekman, Menken & Griscom, for petitioner.

Archibald R. Watson, Corp. Counsel, for defendant.

DELANY, J. The relator on this motion asks this court for a peremptory writ of mandamus, requiring the mayor of the city of New York to grant to him a license to maintain a moving picture show on premises No. 216 East Forty-Second street, in the city of New York. These premises immediately adjoin one of the large public schools conducted under the board of education for day and evening classes, and is opposite the parish house and other buildings of St.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bartholomew's Church, which are in a large part devoted to the use of young people for purposes of religion, education, and charity. The mayor, assuming to exercise discretion in the matter, after considering the relator's application for the license, denied it. Preceding this action on the part of the mayor, an open hearing was accorded the public, at which the views of citizens on the subject were expressed, and numerous remonstrances from various sources against the granting of the license were presented to the mayor. There were also submitted to him petitions of citizens advocating, on behalf of the relator, the granting of the license.

[1] It would thus seem that at this stage of the matter the relator and the remonstrants alike believed that the question at issue was properly addressed to the discretion of the mayor. The attitude of the relator on this motion, however, is antagonistic to the position seemingly taken then. The main consideration, therefore, on the law of the case, is: Did the mayor have the right to exercise his discretion? and was it validly exercised? If both these questions be answered in the affirmative, the relator is not entitled to the remedy he seeks, and a writ of mandamus should not issue from this court.

There is no dispute of material facts to complicate the matter or to require any mediate proceedings. The subject of such license is regulated by the ordinances passed by the board of aldermen in the exercise of power lawfully conferred on it by the Legislature of the state. The constitutionality of these provisions is therefore not disputed, and our discussion is thus to be confined to the ordinances themselves. These ordinances are section 305 et seq. of the Code of Ordinances of the City of New York. They read as follows:

"Sec. 305. The following businesses must be duly licensed as herein provided, namely, public cartmen, truckmen, hackmen, cabmen, expressmen, drivers, junk dealers, dealers in second-hand articles, hawkers, peddlers, vendors, ticket speculators, coal scalpers, common shows, shooting galleries, bowling alleys, billiard tables, dirt carts, exterior hoists and stands within stoop lines and under the stairs of the elevated stations.

"Sec. 306. No person shall engage in or carry on any such business without a license therefor under a penalty of not less than * * * for each offense.

"Sec. 307. All licenses shall be granted by authority of the mayor and issued by the bureau of licenses for a term of one year from the date thereof, unless sooner suspended or revoked by the mayor. * * * The mayor shall have power to suspend or revoke any license or permit issued under the provisions of this ordinance. The mayor shall also have power to impose a fine * * * for any violation of the regulations herein provided, and to suspend the license pending the payment of such fine," etc.

Section 305 discloses the fact that certain classes of businesses, in order to be lawfully conducted, require licenses; and this is fortified by section 306, which states that no person shall engage or carry on any such business without a license under a penalty. Section 307, which is entitled "Licenses and License Fees," prescribes that "all licenses shall be granted by authority of the mayor." It is on the interpretation of this section that a large part of the contention herein raised hinges. I would not deem it necessary to venture upon the interpretation of this section, had not the learned counsel for the relator

placed so much stress on this point, seemingly with the support of an eminent authority, claiming that it confers no discretion on the mayor, but rather stripped him of any judicial power, and makes the granting of such a license a purely ministerial act.

It is contended that the language employed conveys no idea of an act permissive in its nature, but of one which is mandatory; and as if to make this argument more clear it is urged that "shall" in the sentence has the force of "must"; that "all licenses shall be issued by the authority of the mayor," according to the interpretation, means "must be issued" by him. In endeavoring to comprehend the meaning of a sentence, it is not always useful to subject it to grammatical analysis, because frequently looseness of expression may make such analysis negative the obvious meaning. This, however, is not the case here. What is predicated in the sentence, either according to the laws of logic or of grammar, is not said of the mayor, but of "licenses." If it read the mayor "shall" grant licenses, there might be some debatable ground for the claim that "shall" in the context meant "must," although I would not even then feel constrained for many reasons to adopt such a meaning. But I can see no need to appeal to any interpretation to enforce on any word a different meaning than it is needful for it to bear in order to show what the sentence intends. The sentence provides that licenses (the subject) shall be granted by the authority of the mayor, and taking the rest of the same paragraph, if needed to support the position I contend for, it will appear that licenses again are spoken of "and issued by the bureau for a term," etc.

[2] An equivalent expression, it seems to me, will make manifest the meaning. Change the sentence so that it shall begin with a negative, as: "No licenses shall be granted unless by the authority of the mayor." If this method of testing the meaning is a fair one, it will be seen that the sentence refers to the condition under which licenses are to be issued, and the meaning of the sentence, grammatically considered, is mandatory on licenses, which may only be issued by the authority of the mayor. It is not mandatory on the action of the mayor. The language, therefore, is not effectual to prescribe any mandatory action on the mayor, and whether such action is mandatory or discretionary must be sought, not in the words of the ordinance, which are clear, but in the nature of the act to be performed, and from that may be determined the character of the power conferred on the mayor. The ordinance requires that licenses shall be granted by the mayor. No other officer is empowered to grant them. What is granted is a license. A license is a permission to do something. Its granting involves the giving of permission. Its very meaning involves the exercise of discretion. This, it seems, is determinative of the nature of the act which the mayor has to perform, and this act is discretionary, not mandatory.

It may be contended that the term "license" is an inapt word to characterize the idea intended to be expressed. Then we may turn to the subject in which it is used to test the appositeness of the term. The ordinance says that certain businesses must be duly licensed. Among the various businesses and avocations mentioned are "com-

mon shows." Common shows are like the other businesses, and the other businesses are operated under license in the accepted meaning of that term. The courts, for instance, have held that the power of the mayor to license vehicles in general is discretionary, and that the object of the ordinance is not so much to raise a tax as to preserve good order. People v. Mayor, etc., 7 How. Prac. 81. So, the present power being discretionary, the consent granted is properly termed a license. The very idea of a license connotes discretion, and not compulsion, in its granting. The reason for the exercise of the discretion in the mayor is, as the court indicates, "to preserve good order." People ex rel. Van Norden v. Sewer Comm. of Saratoga, 90 App. Div. 555, 86 N. Y. Supp. 445; Cumiskey v. Wurster, 14 App. Div. 556, 43 N. Y. Supp. 1088.

The experience of men in civilized communities throughout the world can be brought to our aid to show that the obvious reason for regulating certain businesses by licensing those who conduct them is to conserve the public welfare. And the obvious purpose of vesting in some officer the right to grant such persons licenses is to charge such officer with discretion to say whether the licenses in the interest of the public welfare should be given or withheld. I therefore hold that the power of the mayor to grant a license for such a "common show" as a moving picture show is discretionary, and not mandatory, and as a matter of absolute right relator is not entitled to a license.

[3] A conclusion being reached on that question, we come to the less abstract one: Did the mayor validly exercise his discretion in denying relator's application for a license? The papers show remonstrances from parents of school children frequenting the neighborhood of the place for which a license is sought. There are protests from clergymen of every denomination engaged in the neighborhood, from principals and teachers of schools, and from officials of the board of education. These enlightened and benevolent people cannot be suspected of having any pecuniary interest to be served by preventing the granting of the relator's license. They may be regarded, and doubtless were so regarded by the mayor, as conservators of the public welfare, unselfishly interesting themselves in the highest good of the young of the community, to prevent the establishment of allurements which might work to their detriment. If the mayor had acted arbitrarily or capriciously, and without exercising his discretion, within the meaning of the law, there might be room for action on the part of the court (People ex rel. Lodes v. Board of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. [N. S.] 894; Armstrong v. Murphy, 65 App. Div. 126, 72 N. Y. Supp. 475); but it is quite manifest that this is not the case and he exercised his discretion and unquestionably with ample justification. The mayor is vested with the exercise of this discretionary power by law. With sufficient ground before him, he has exercised validly his discretion. To ask this court to coerce him by its mandate to do otherwise would be tantamount to asking it to substitute without a trace of right its judgment for that of the lawfully constituted authority—the mayor.

Motion denied, with $10 costs.