LYMAN BRIGHTMAN V. COMANCHE COUNTY.

No 1027. Decided June 26, 1901.

1. **School Land—Defaulting Purchaser—Declaration of Forfeiture—Statute—Substantial Compliance.**

Under the Act of March 25, 1897, requiring the Land Commissioner to forfeit purchases of school land on default in payment of interest by indorsing on the purchaser's obligation and entering on his account the words "Lands forfeited," in case of default by a purchaser under the Act of 1879, whose obligation was lawfully on file in the Treasurer's office instead of the Land Office, where those of purchasers under other acts were kept, the statute was substantially complied with and forfeiture effected where the entry was made on the account and the required indorsement, not on the obligation in the Treasurer's office, but on the file wrapper containing all papers in the Land Office relating to the claim. (Pp. 601-605.)

2. **Same—Statutory Construction.**

The directions given by statute as to the manner of exercising the authority conferred should be treated as subordinate to the command showing the general purpose of the law to require the Commissioner to rescind sales in all cases of default; and a substantial compliance with those directions should be held sufficient in a case where literal compliance would require the Commissioner to perform an act in the office of the Treasurer and one of those officers to certify to the acts or office records of the other. (Pp. 603, 604.)

3. **Statutory Construction—Emergency Clause.**

See this case as to effect of emergency clause in an act upon the construction and operation of other provisions therein. (P. 604.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Comanche County.

Brightman brought the suit against Comanche County. He had judgment which on defendant's appeal was reversed and rendered in its favor, and thereupon he obtained writ of error.

*Russell & Brightman* and *Goodson & Boynton*, for plaintiff in error.— The Commissioner of the General Land Office on the 4th day of April, 1898, made the proper entry on the ledger account, and the original application not being in his office and not being an archive of his office, but by the law then in force being in and an archive of the State Treasurer's office, he made the entry on the file-wrapper of the paper of the Holden purchase, which by law was an archive of his office, and under such circumstances it being impossible for him to make such entry on the original application, the same was a substantial compliance with the provisions of the law, and it was just as effectual to forfeit said purchase as if such entry had been made on the original application, had it been in the office. Fristoe v. Blum, 92 Texas, 77;

Standifer v. Wilson, 93 Texas, 233, and authorities referred to in those two opinions.

The entries required to be made on the application and ledger account were merely to serve as evidence of the happening of the events on which the forfeiture was predicated, and to give notice thereof for the purpose of the resale of the land; and independent of said entries, when the facts on which such entries were authorized to be made had occurred, the purchaser never having had any right of title in the land, but only a right to acquire such right of title by a compliance with the conditions precedent, when he failed to comply with these conditions his right to acquire an interest in the land lapsed, and the State was entitled to rescission, and to resell the land. Fristoe v. Blum, 92 Texas, 77; Standifer v. Wilson, 93 Texas, 322.

*Geo. E. Smith, Joiner & Joiner,* and *Wilkinson & Reid,* for defendant in error.—Under the law, until the Land Commissioner had indorsed on the obligation for said lands the words "Lands forfeited," and had caused an entry to that effect to be made on the account kept with the purchaser, there was no forfeiture of said lands—that is, no rescission of the sale between such purchaser and the State. Sayles' Civ. Stats., art. 4218ll.

It is not allowable to interpret that which has no need of interpretation. In such case any departure from the language used would be an unjustifiable assumption of legislative power. And where the language is susceptible of but one meaning, it must receive that meaning, although such construction leads to results that are absurd or mischievous. 23 Am. and Eng. Enc. of Law, 288-305; Thompson v. Buckley, 1 Texas, 34; Engelking v. Van Wamel, 26 Texas, 470; Turner v. Cross, 83 Texas, 223. "If intention is clearly manifested by language used, effect must be given to it." Smisson v. State, 71 Texas, 231. "When the purpose of a legislative enactment is obvious from the language of the law itself there is nothing left to construction. In such case it is vain to ask the courts to attempt to liberate an invisible spirit supposed to be concealed within the body of the law, and thus interpret away the manifest legislative intention by embracing subjects not within the scope of the statute. The courts must enforce the laws as the Legislature has made them." Dodson v. Bunton, 81 Texas, 658; Schloss v. Railway, 85 Texas, 604. Again, "that construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction that would leave without effect any part of the language used should be rejected, if an interpretation can be found which will give it effect." 23 Am. and Eng. Enc. of Law, 309; Aldridge v. Mardoff, 32 Texas, 207; Ambler v. Whipple, 32 Am. St. Rep., 205.

The proceeding authorized by said statute, being a summary one, must be strictly construed and pursued. 23 Am. and Eng. Enc. of Law, 386-388; 24 Id., 497, 498; 7 Lawson's Rights, etc., p. 5931, sec.

3777. Under this rule all laws providing for forfeitures are construed strictly. By strict construction is meant giving effect to the letter of the law. Black on Interp. of Laws, sec. 113. And even though, as applied to the statute under consideration, the word forfeiture may be inaptly used, and the word rescission would be more appropriate, as was stated in Blum v. Fristoe, 92 Texas, 85, the rule applies just the same. Tom v. Woolhoefer, 61 Texas, 281; Scott v. Blackburn, 47 S. W. Rep., 482. Whether called forfeiture or rescission, there is in either event sacrifice and hardship.

WILLIAMS, ASSOCIATE JUSTICE.—Plaintiff in error brought this action to recover of Comanche County and its officers part of a section of land which had once been a part of the public school land. Plaintiff asserted right to the land as a purchaser from the State; defendant under a prior purchase made by one Holden, to whose rights it had succeeded. The prior purchase of Holden had been declared forfeited by the Commissioner of the Land Office for nonpayment of interest and plaintiff had thereafter regularly bought. The legality of such forfeiture is the only question in the case. It was declared by the Commissioner of the General Land Office on the 4th day of April, 1898, under authority of the act of the Legislature approved March 25, 1897. Laws 1st Called Sess. 24th Leg., p. 39. That law is as follows: "Be it enacted by the Legislature of the State of Texas: That if upon the first day of November of any year any portion of the interest due by any person to the State of Texas for lands heretofore sold by the State of Texas, whether said lands be a part of the public domain or shall have been heretofore set apart for the public schools, university, or any of the other various State institutions, has not been paid, it shall be the duty of the Land Commissioner to indorse on the obligation for said lands, 'Lands forfeited,' and shall cause an entry to that effect to be made on the account kept with such purchaser, and thereupon said lands shall thereby be forfeited to the State, without the necessity of re-entry or judicial ascertainment, and shall revert to the particular fund to which it originally belonged, and be resold under the provisions of the existing law, or any future law; provided, the purchaser of said land shall have the right, at any time within six months after such indorsement of 'Lands forfeited,' to institute a suit in the District Court of Travis County, Texas, against the Commissioner of the General Land Office, for the purpose of contesting such forfeiture and setting aside the same, upon the ground that the facts did not exist authorizing such forfeiture, but if no such suit has been instituted as above provided, such forfeiture of the Commissioner of the General Land Office shall then become fixed and conclusive; provided, that if any purchaser shall die, or shall have died, his heirs or legal representatives shall have one year in which to make payment after the first day of November next after such death.

"This act is cumulative and is not intended to deny to the State the right to institute any legal proceedings that may be deemed neces-

sary to secure the purchase money or possession of the land so sold. And this act is intended to be applicable to all purchases heretofore made under any or all of the various acts of the Legislature under which land may have been sold by the State."

It is conceded that the specified facts existed to authorize the forfeiture and that the Commissioner, in declaring it, did everything required by the act except to indorse on the obligation of Holden the words "Lands forfeited." This he did not do because the obligation was not an archive of his office but was in the office of the State Treasurer. Instead, besides making the indorsement on the account, he indorsed the words upon the file wrapper containing all of the papers of his office relating to this purchase, and transmitted to the State Treasurer a notice showing such forfeiture, and the latter made a corresponding entry upon the account in his office. The reason why the obligation was not in the Land Office is fully explained by former laws. Under the Act of 1879, in force when Holden purchased, such obligations were to be first sent to the Commissioner and were to be by him registered in his office and then delivered to the State Treasurer and to be kept by the latter. The application, the affidavit, the field notes, and receipts of the Treasurer for money paid by the purchaser were to be filed and kept in the Land Office. Both officers were required by this and subsequent laws to keep an account with the purchaser.

Under that act, forfeitures for nonpayment of interest were to be enforced by a proceeding in court, instituted upon the certificate of the Commissioner showing such nonpayment. A copy of the judgment was to be filed in the Treasurer's office and he was to indorse the obligation "forfeited" and send it to the Land Office, where it was thereafter to be kept. No other provision has ever been made by law for the deposit in the Land Office of obligations taken under this statute, and as there had never been a proceeding for a forfeiture such as is here provided, and as this law has been superseded by others, it gave no authority for changing the place of deposit from the Treasurer's office to the Land Office. All subsequent laws contained different provisions. By the Act of 1883, sales were made and obligations taken by agents of the land board. On the dissolution of that body by the Act of 1887, its secretary was required to deposit with the Commissioner "all the books, papers, and records belonging to or appertaining to the land board," and such papers, etc., became records of the Land Office. Obligations which had been placed in the Treasurer's office under the Act of 1879 did not come within this description and therefore properly remained in the custody of the Treasurer. Under the Act of 1887 and all subsequent statutes, obligations were required to be sent to the Commissioner and to be retained by him. All of these statutes, after that of 1883 authorized forfeitures by the Commissioner and directed the manner in which he should evidence his act in the same language as that employed in the Act of 1897 above quoted. That act, in language as distinct as could be used, applied its

provisions to all sales previously made under any law. To make its action complete, the Legislature, at the same session, by House bill No. 75 (the other statute being House bill No. 74) undertook to validate all forfeitures already declared of purchases made "under the various acts of the Legislature." It has already been held by this court that these statutes are to be treated as merely making provision for the exercise of the right of the State to rescind executory contracts of sale for the failure of purchasers to perform the conditions on which the continuance of their rights depends, and as conferring authority upon the officer of the State to act for it in effecting such rescission. Fristoe v. Blum, 92 Texas, 76; Standifer v. Wilson, 93 Texas, 232.

That the mere default of the purchaser does not, ipso facto, put an end to the contract, but that the Commissioner must exercise the authority given by the statute at the time and in the manner prescribed has also been decided. Savings Bank v. Dowlearn, ante, p. 383. The latter decision was made in a case in which the Commissioner had made no declaration at all, at a time when he was authorized to act, and involved no question as to the completeness of a forfeiture attempted when the power existed. To maintain this judgment, it would be necessary to go a step further and hold that the acts done by the Commissioner, when the facts existed to authorize a forfeiture, were not sufficient under the statute.

As we have seen, the statute distinctly and imperatively required the Commissioner to forfeit all sales when interest was not paid as required, thus forbidding him to make any exception. It is not to be supposed that it was intended that the Commissioner should make the prescribed indorsements anywhere but upon papers or records of his office. The record of the official acts of such officers is uniformly required to be kept in their offices; and the evidence of them is either certified copies or certificates of the officers stating the facts shown by such records. Had the Legislature intended that an indorsement should be made upon a writing in the Treasurer's office, undoubtedly that officer would have been required to make it, as he was required by the repealed law under which the obligation was deposited there. Any other view would result in the conclusion that the law requires the Commissioner to perform an official act in the Treasurer's office and that the evidence of it should be either the certificate of the Treasurer to the act of the Commissioner, or of the Commissioner to the records of the Treasurer's office. It is quite plain that this was not contemplated. It is equally plain that these two officers could not lawfully remove a paper from the office in which the law required it to be and deposit it in the other office without legislative authority, which, as we have seen, has never been given. It follows that the Commissioner could not comply literally with the requirement that he indorse the forfeiture on the paper signed by the purchaser, and that if he executed the plainly expressed command to forfeit all sales, he necessarily had to do it by a substantial compliance. We think the

natural and reasonable view to be taken of the statute is to treat the directions given as to the manner of exercising the authority conferred as subordinate to the command showing the general purpose of the law, and make the latter prevail by requiring such action only as would constitute substantial compliance with the former. The purpose was to have the sales rescinded and the Commissioner was required to make the rescission. The indorsements prescribed were intended merely as the authentic evidence of the action.

When the law was passed, probably the great mass of obligations of purchasers had been taken under laws subsequent to that of 1879, and were in the Land Office. Each of the later laws contained clauses of forfeiture, and the chief purpose of the Act of 1897 was evidently to remove any doubt as to the existence of the power to forfeit purchases made under statutes prior to the law of 1895 then in force; and this the Legislature sought to accomplish by simply adopting the language of the Act of 1887 and of every subsequent act and making it apply to all sales without taking note of the fact that obligations received under the earlier laws were not in the Land Office. If it can be avoided, such fact should not be allowed to defeat the chief purpose of the statute.

The directions given as to the manner of declaring the forfeiture can and must be substantially applied so as to make them accord with the plainly expressed intention of the Legislature. What the Legislature had in mind was that the evidence of the contract was in the Land Office. In most instances, the instrument, styled in all of the statutes the "obligation," was in that office. In some instances, this instrument was in the Treasurer's office, but the application, the field notes, the affidavit, the receipts of the Treasurer for payments, and an account with the purchaser were in the Land Office. These furnished such evidence of the contract that its terms could be learned from them if the obligation were lost. Upon such papers all other action of the Commissioner was based, and upon them he could act in declaring a forfeiture, when he did not have the obligation itself. Since the statute required him to act in such cases, its command could only be substantially obeyed by his acting upon that which stood in his office in the place of the obligation. The file wrapper itself was a paper which the law required him to keep (Revised Statutes, article 4046), and it inclosed all the papers in his office evidencing the contract; and the account, also required to be kept, showed the standing of the purchaser. The indorsements upon these were such compliance with the law as he could make, and we think, as they furnished evidence of his action which met the purposes of the law, they were sufficient. Whether or not the indorsement on the account alone would be sufficient, where the obligation is not in the office, we need not determine. If it be said that, although the Commissioner could not comply literally with the statue and therefore could not make a valid cancellation, there was left a remedy in the courts, the answer is that the emergency clause of the statute shows its purpose to be to avoid the multitude of suits which a resort to the courts would require.

The action taken by the Commissioner terminated the contract with Holden, and the purchase of plaintiff in error was valid. The judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*