HOUSTON OIL CO. OF TEXAS v. REESE–
CORRIHER LUMBER CO. et al.*
(No. 47.)

(Court of Civil Appeals of Texas. Beaumont.
Dec. 16, 1915. Rehearing Denied
Jan. 6, 1916.)

1. PLEADING &#x2295;&#x2192;236—AMENDMENT — DISCRE-
TION OF COURT.

The right to file an amended petition is not
an absolute right, but is within the discretion
of the trial court.

[Ed. Note.—For other cases, see Pleading,
Cent. Dig. §§ 601, 605; Dec. Dig. &#x2295;&#x2192;236.]

2. TRESPASS TO TRY TITLE &#x2295;&#x2192;6—EVIDENCE—
TITLE PROVABLE.

Under a petition in trespass to try title,
any title except title by limitation can be shown,
and facts supporting any character of title
may be introduced in evidence, unless they rest
upon limitation alone.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 5–9, 15, 16; Dec. Dig.
&#x2295;&#x2192;6.]

3. APPEAL AND ERROR &#x2295;&#x2192;1041 — HARMLESS
ERROR—AMENDMENT OF PLEADINGS.

The original petition in an action was in
the ordinary form of a petition in trespass to
try title and for damages to timber cut and
converted. On the day the case was set for
trial, plaintiff presented an amended petition,
alleging that defendants were estopped, by rea-
son of certain alleged facts, to set up title
against plaintiff, and offering to do equity. The
court refused to permit the filing of this amend-
ed petition, but plaintiff on the trial was permit-
ted in open court to make the same offer to do
equity made in the amended petition, and to in-
troduce all of the evidence claimed to show an
estoppel. Held, that it did not appear that
plaintiff suffered any injury from its failure to
file its amended petition, or from the absence
of any tender in the original petition.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4106–4109; Dec. Dig. &#x2295;&#x2192;
1041.]

4. PUBLIC LANDS &#x2295;&#x2192;172 — FORFEITURE OF
PURCHASE—EFFECT.

Where a purchase of land from the state
was forfeited by the Commissioner of the Gen-
eral Land Office for nonpayment of interest on
the purchase price, the title acquired by the pur-
chase was extinguished, and the land was restor-
ed to the public domain of the state.

[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 523–543; Dec. Dig. &#x2295;&#x2192;172.]

5. ESTOPPEL &#x2295;&#x2192;49—ASSETS AND RIGHTS SUB-
SEQUENTLY ACQUIRED.

T. purchased land from the state as an ac-
tual settler in 1896, and in 1901 conveyed to
plaintiff's grantors by warranty deed in consid-
eration of a cash payment and the assumption
by plaintiff's grantors of the obligation to the
state for the unpaid purchase money and in-
terest thereon. The interest was not paid, and
the purchase was forfeited for nonpayment of
interest, and the land was again placed on the
market for sale, reappraised, and again sold to
T. as an actual settler. T. subsequently com-
pleted his purchase and acquired a patent.
Held, that he was qualified to purchase the land
from the state upon its resale, and the title so
acquired did not pass to plaintiff by estoppel,
as there was no breach of T.'s covenant of war-
ranty, and plaintiff's title was lost through its
own neglect and default, especially as title could
not pass by estoppel at the date of the second
purchase, since plaintiff, a corporation, could
not be an actual settler and could not comply
with the conditions upon which title could be

obtained, while to hold that title passed when T.
completed his 3 years' occupancy would require
a holding that plaintiff had a right to require
T. to live on the land for 3 years and spend
his money in making permanent and valuable
improvements for its benefit.

[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. § 119; Dec. Dig. &#x2295;&#x2192;49.]

6. PUBLIC LANDS &#x2295;&#x2192;172 — FORFEITURE OF
PURCHASE—RIGHT OF REINSTATEMENT.

Where land purchased from the state was
forfeited for nonpayment of interest, and the
right of those claiming under the purchaser to
reinstate the purchase had never been exercised,
the naked right to reinstate did not amount to
a title.

[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 523–543; Dec. Dig. &#x2295;&#x2192;172.]

Appeal from District Court, Orange Coun-
ty; A. E. Davis, Judge.

Action by the Houston Oil Company of
Texas against the Reese-Corriher Lumber
Company and others. Judgment for defend-
ants, and plaintiff appeals. Affirmed.

Parker & Kennerly and J. J. Lee, all of
Houston, for appellant. Smith, Crawford &
Sonfield, Minor & Minor, all of Beaumont,
and Andrews, Streetman, Burns & Logue, of
Houston, for appellees.

BROOKE, J. This is an action of trespass
to try title and for damages for timber cut
from the land in controversy, brought in the
district court of Orange county, Tex., on the
11th day of August, 1913, by appellant
against appellees. The trial in the court be-
low resulted in the court peremptorily in-
structing the jury to return a verdict against,
and the judgment of the court being render-
ed against, appellant on the issue of dam-
ages for timber cut, as well as for the land
in controversy.

The tract of land in controversy is T. &
N. O. section 38, in Orange county, Tex.,
which formerly belonged to the public school
fund. On April 9, 1896, it was awarded to
one C. W. Theriot, as an actual settler, as
dry-grazing land at $1 per acre, one-fortieth
of the purchase money being paid by Theriot,
who executed to the state of Texas his ob-
ligation of payment of the balance of the
purchase money, with interest thereon, as
provided by law. On January 3, 1901,
Theriot conveyed said tract of land to George
W. Carroll by general warranty deed, the
consideration clause of which was as fol-
lows:

"For and in consideration of the sum of $1,200
to me in hand paid by George W. Carroll, the re-
ceipt of which is hereby acknowledged, and the
further consideration of the assumption by the
grantee herein of all sums of money due and
to become due the state of Texas by me as pur-
chase money or interest thereon for land here-
inafter described."

On the same day, January 3, 1901, Theriot
conveyed the tract of land to Beaumont Lum-
ber Company, by general warranty deed, the
consideration clause of which reads as fol-
lows:

---

&#x2295;&#x2192;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.

"$1,200 cash in hand paid, the receipt whereof is hereby acknowledged and the further consideration of the assumption by the grantee herein of all unpaid obligations due by the grantor herein to the state of Texas, on account of the lands herein conveyed."

The deed from Theriot to Carroll was recorded on the day following this, but the deed from Theriot to Beaumont Lumber Company has never been recorded. On April 22, 1915, a few days before the trial of this case, Carroll conveyed the tract of land to the Houston Oil Company of Texas, and that deed contains the following recital with reference to Theriot's deed of January 3, 1901, to wit:

"Said conveyance or instrument having been executed by the said Theriot to me for the benefit of Beaumont Lumber Company, I, the said George W. Carroll, being trustee of said Beaumont Lumber Company," etc.

On June 3, 1902, Theriot's purchase of said land from the state of Texas was forfeited for nonpayment of interest due November 1, 1901, and the land was thereafter, on or about the 10th day of June, 1902, again placed on the market for sale, reappraised at $3 per acre, and on November 17, 1902, the same was sold and awarded to C. W. Theriot as an actual settler. On January 26, 1906, the tract of land in controversy was patented by the state of Texas to C. W. Theriot, under and by virtue of purchase made by him on November 17, 1902, the patent reciting that the land had been purchased and fully paid for in accordance with the School Land Act of April 19, 1901.

Houston Oil Company of Texas claims under a deed from Beaumont Lumber Company of date January 3, 1902, executed by its vice president, George W. Carroll and under a deed from George W. Carroll of date April 22, 1915. In other words, the Houston Oil Company of Texas claims title under the first sale by the state of Texas to C. W. Theriot. The appellee John N. Gilbert claims title to the land in controversy under a deed to him from C. W. Theriot, dated September 21, 1906, conveying the east half thereof, and under a deed to him and W. A. Ward dated January 21, 1906, conveying the west half thereof, said west half thereof having been conveyed to W. A. Ward by C. W. Theriot on January 22, 1906. The appellee R. W. Wier Lumber Company claims the merchantable pine timber on the land under deed from John N. Gilbert of date August 28, 1907, and appellee Reese-Corriher Lumber Company claims a portion of the merchantable pine timber upon said land under deed from R. W. Wier Lumber Company, of date April 3, 1913, the Gilbert title to the timber being the same as his title to the land, except by deed dated January 22, 1906, Theriot conveyed the pine timber on the east half of the land to W. A. Ward, who on January 23, 1906, conveyed said timber to John N. Gilbert. In other words, the appellees all claim under the second sale by the state of Texas to Theriot, and the patent issued by the state of Texas on said second sale.

Appellant's assignments of error are six in number. The first two relate to the rulings of the trial court in connection with the effort of appellant to file an amended petition on the morning when the case was set for trial, it being claimed that it was error for the trial court to refuse to permit the amended pleading to be filed; and, second, that it was error for the court to refuse to postpone or continue the cause after refusing to permit the amendment to be filed, the remaining assignments of error being 3 to 6, inclusive, complaining of the action of the trial court in peremptorily instructing the jury to return their verdict in favor of appellees.

First, on the right of appellant to file amendment to its petition on the day the case was set for trial. The plaintiff's original petition in this case was the ordinary form of petition in action of trespass to try title, and for damages for timber alleged to be cut and converted by the defendants herein, or some of them. The amended petition, which the court refused leave to file, contained additional allegations, in substance, as follows: (a) That the appellee Gilbert was estopped by reason of certain alleged facts to set up or claim title against appellant; (b) that all of the appellees, by reason of certain alleged facts, were estopped to set up title against appellant; (c) an offer on appellant's part to do equity.

[1] The right to file an amended petition is not an absolute right, but is within the discretion of the trial court. In the case of Lipscomb v. Perry, 100 Tex. 122, 96 S. W. 1069, Justice Williams uses the following language:

"When the court acted, it was in the exercise of its sound discretion, and the presumption is that its action was based upon a due consideration of all of the facts which should affect it. The party complaining cannot say that any absolute right of his was violated, and, therefore, in order to successfully attack the ruling, he must show an abuse of the discretion and an injury to him. The burden is not upon the opposite party to show affirmatively that the ruling was correct, because he would have been surprised by the pleading. The rule laid down in the decision referred to is not that the right of amendment exists subject to the right of the opposite party to show that the proposed pleading would surprise him, but that in such situation the matter is subject to the sound discretion of the court, the exercise of which may be based, not only on the fact that the pleading on its face appears to be calculated to surprise, but also on the fact that it may delay the trial and impede the speedy and orderly administration of justice and the dispatch of the business of the court."

Judge Fly of the San Antonio Court, in the case of S. A. & A. P. Ry. Co. v. Miller, 137 S. W. 1194, said:

"Appellant could not quietly sit by for six months, and then, after the case had been called for trial and announcement of ready made by the plaintiff and a codefendant, seek to file a pleading that would not only interpolate new issues, but probably cause a continuance and seriously interfere with the business of the court.

Matters relating to the amendment of pleadings during a trial must be largely intrusted to the discretion of the trial judge, and, unless there is a palpable abuse of such discretion, appellate courts will not interfere with rulings in connection therewith. Bailey v. Fly, 97 Tex. 425 [79 S. W. 299].

[2] Nowhere in the plaintiff's brief is even an effort made to show any injury resulting to it from its inability to file its amended petition. Under a petition in trespass to try title, any title except the title by limitation can be shown. The party may introduce in evidence facts which would support any character of title he may claim to have acquired he may see fit to assert excepting they rest upon limitation alone. Meade v. Logan, 110 S. W. 188.

[3] Upon trial of this cause appellant was permitted to prove the connection of John N. Gilbert with the Beaumont Lumber Company, and all facts and circumstances surrounding the execution of the deed by Beaumont Lumber Company to Houston Oil Company of Texas. Appellant was also permitted, upon the trial of the case, in open court, to make the same offer to do equity as it made in the amended petition. It also offered the entire chain of title out of C. W. Theriot upon each of the sales made by the state of Texas to him; and, so far as we can ascertain from the record before us, there was before the court upon the trial of this cause all the evidence the appellant claimed had the effect of vesting in it title by estoppel as against Theriot and the appellees claiming under his second purchase. As said above, from the record we cannot say that the appellant was not permitted to prove anything which it could or would have proven had the amendment been permitted, and it is not shown that there was any matter set up in the amendment which it could and would have proven that would have necessitated a different judgment. It is not even claimed that the additional matters pleaded were not proper to be proven under the original petition, and as a matter of fact, as said above, the appellant was permitted to prove in the court below, so far as it could prove the thing, all facts set up in the amendment by way of additional allegations; also was permitted to make the offer upon the trial to do equity.

A careful consideration of the record impresses this court with the fact that no showing has been made that, by reason of the failure of the appellant to file his amended petition, or by reason of the absence of any tender in the original petition, or its effectiveness upon the trial of the cause resulted in any injury of any character to appellant.

The second assignment complains of the refusal of the court to postpone or continue the cause after refusing leave to file the amended petition. That postponement was claimed upon the ground alone that the court refused to permit the amended petition to be filed. Therefore, appellant's first and second assignments of error are overruled.

By the appellant's third assignment of error, error is based upon the court instructing the jury to return a verdict in favor of defendants, and in rendering a judgment against plaintiff, because it is claimed that the evidence in this case shows that C. W. Theriot in 1901 conveyed by general warranty deed to plaintiff's vendors the land in controversy, prior to the issuance of the patent to C. W. Theriot in 1906, and that defendants had full notice and knowledge of such conveyances to plaintiff's vendors prior to the conveyances by C. W. Theriot to them in 1905 and 1906, and it is claimed that the defendants, and all of them, took only such title or claim as the said Theriot had at the date of the deeds from him to defendants and their vendors, and that, as all title and right of C. W. Theriot to the land in controversy had, prior to the deed from him to defendant, passed by virtue of said Theriot's warranty into the plaintiff, the defendants, nor any of them, have any title or claim against the plaintiff for any part of the land in controversy. The first purchase made by C. W. Theriot from the state of Texas was forfeited for nonpayment of interest, and the land thereby reverted to the public school fund, said first purchase from the state being made on March 24, 1896. He conveyed to Carroll and Beaumont Lumber Company on January 3, 1901. J. T. Robison, Commissioner of the General Land Office, testified by deposition as follows:

"It [the sale made in 1896 to Theriot] was forfeited June 3, 1902 for nonpayment of interest. I have attached to the preceding interrogatory certain copies of records, showing the forfeiture of the sale of said land, and I further attach hereto a certified copy of that part of the delinquent list of 1902, furnished this department by the state treasurer, which pertained to said section 38, which list contained the lands upon which the interest had not been paid, and were reported to this department by the state treasurer, and marked the same 'Exhibit O' for identification, and also a certified copy of notice of forfeiture of said land furnished the county clerk of Orange county on said date, June 3, 1902, marked 'Exhibit P' for identification."

There was also offered in evidence classification and appraisement, showing the classification and appraisement of the land in controversy, dry-grazing land, at $1 per acre; also the application and obligation of C. W. Theriot to purchase said land as an actual settler on 40 years' time, at 3 per cent. interest, filed May 24, 1896; also the notation on said application and obligation, showing the award of said land to Theriot on April 9, 1896. The indorsement upon the obligation also was introduced, being as follows:

"Land forfeited for nonpayment of interest, June 3, 1902.

"Chas. Rogan, Commissioner G. L. O."

The account of the state of Texas with C. W. Theriot, showing the last payment of interest on November 1, 1900, and indorsement thereon "forfeited for nonpayment of interest due November 1, 1901"; also letter from Commissioner of the General Land Office to the

county clerk of Orange county, of date June 10, 1902, advising the clerk of the forfeiture of said purchase on June 3, 1902, for nonpayment of interest and indorsement on the file wrappers were also introduced, containing papers relating to said sale to Theriot, reading as follows:

"Land forfeited for nonpayment of interest June 3, 1902.

"Chas. Rogan,
"Commissioner General Land Office."

In addition to the above testimony, no question is made in this record as to the legality of the forfeiture of Theriot's first purchase.

[4] The next question is what effect the forfeiture had. In the case of Lawless v. Wright, 39 Tex. Civ. App. 28, 86 S. W. 1040, it is said:

"It is the settled law that the state of Texas has the power and authority to forfeit, through a declaration of the Land Commissioner, a sale of its lands, for the nonpayment by the vendee of the interest on the purchase money. Fristoe v. Blum, 92 Tex. 76, 45 S. W. 998; Standifer v. Wilson, 93 Tex. 232, 54 S. W. 898; Brightman v. Comanche County, 94 Tex. 599, 63 S. W. 857. Such being the law, the act of the Land Commissioner in forfeiting the purchase of the land by Fancher had the effect of restoring such land to the public domain of the state. When the declaration of forfeiture was made, appellee had been in possession of the land for only seven years, and, of course, had not perfected his title by 10 years' limitation. Statutes of limitation not applying to the sovereign, the moment the forfeiture of Fancher's title went into effect the statute of limitation as to the land was interrupted. After the forfeiture the land assumed the same status that it occupied before the sale to Fancher, and the state clearly had the right, which it exercised, of placing the land on the market again and selling it. It is provided in article 4218l, Sayles' Ann. Civ. St. 1897, that when a forfeiture takes place the land 'shall revert to the particular fund to which it originally belonged, and be resold under the provisions of this chapter or any future law.' It is true that in article 4218f it is provided that: 'In any case where lands have been forfeited to the state for the nonpayment of interest, the purchasers or their vendees may have their claims reinstated on their written request, by paying into the treasury the full amount of interest due on such claim up to the date of reinstatement; provided that no rights of third persons may have intervened.' But that provision in no way weakens or affects the proposition that a forfeiture restores the land to the public domain and reinvests the title in the state. In this case, after the forfeiture, the state exercised its right to again sell the land; and, had it not been for the voluntary relinquishment of his title by D. Lawless, the purchase made by Fancher would never have been reinstated. The forfeiture destroyed his claim to the land completely, and the privilege given to him to have it restored depended on certain payments, and on the rights of others not intervening. That privilege did not limit the rights of the state in the land, no more than if it had been provided that the original purchaser should have the right to purchase again if no one else had purchased, and that credit would be given for the amounts already paid. In other words, the provision as to reinstatement did not have the effect of continuing the title, whether legal or equitable, in the purchaser, after the forfeiture; and, although he may have fully intended to have his claim reinstated at some future time, he could not, until that reinstatement was made,

have maintained a suit for possession. He did not have any possession, or right of possession, to be invaded by appellee after the forfeiture, and limitation could not run against him."

We are of opinion that the above decision disposes of the question as to the status of the title claimed by appellant under the first sale to Theriot.

[5] The next proposition for us to consider is whether or not the title which Theriot acquired in his second purchase passed by estoppel to the appellant. The appellees, in an able brief and argument, take the position that an after-acquired title—

"never passes under a covenant of general warranty where there has been no breach of covenant, and that the ejection of the grantee by reason of an incumbrance resting on the land at the time of its conveyance does not constitute a breach of covenant of warranty where the grantee, knowing of the existence of the incumbrance at the time of the execution of the deed, has agreed to discharge the same."

It is evident from the record that the Beaumont Lumber Company and Carroll, by the wording of the deed from Theriot to them, assumed Theriot's obligations to the state of Texas, including the annual payment of interest, and it is also evident that the title conveyed to them by Theriot was lost by reason of their failure and the failure of their grantee to pay the annual interest. There is no breach, so far as this record shows, of Theriot's covenant of warranty, and the question is whether the title which he afterwards acquired from the state of Texas passed to appellant by estoppel. Appellees assert that a covenant of general warranty contained in a deed will not be construed as an undertaking by the vendor to be accountable for acts or omissions of the vendees, after the date of the deed, in consequence of which the vendee may have parted with the title to the property, and that if the vendee has in such manner parted with the title to the property, neither the vendor nor those claiming under him thereafter will be estopped to set up, as against such vendee an after-acquired title. They further assert that an after-acquired title does not pass by a covenant of warranty where the assertion of such title is not a violation of the covenant, and that a covenant of general warranty has relation to the state of the title at the date of the deed, and a title afterwards acquired by the grantor which was not in existence at the date of the deed, does not pass to the grantee by estoppel; also that an after-acquired title does not pass by estoppel where the assertion of that title is not inconsistent with the title conveyed by the deed containing the covenant, and they assert that the title acquired by Theriot at the second sale made by the state of Texas to him did not pass by estoppel to the Houston Oil Company of Texas, by reason of the covenant of warranty contained in the deeds to Carroll and the Beaumont Lumber Company, for the reason: (a) That the title conveyed by said deed failed, through the neglect and default of said grantor, Beaumont

Lumber Company, and Houston Oil Company of Texas, and not through the laches or default of Theriot; and (b) because the loss of title conveyed by said deed did not constitute a breach of Theriot's covenant; and (c) because the assertion of title acquired by Theriot in the second sale is in no respect either a breach of covenant or inconsistent with the title conveyed by said deed.

There is great force in these counter propositions, and to the mind of the court they are conclusive. The doctrine of estoppel is an equitable one, and has never been applied where its application would result in injustice. So far as we have been able to ascertain, in cases where a grantor is not permitted to set up an after-acquired title, it is true only because to permit him to do so would permit him to deny a fact which, by his deed, he has affirmed. The title that Theriot conveyed to Carroll and the Beaumont Lumber Company was a good title, but it was incumbered by Theriot's obligation to the state of Texas. Carroll and the Beaumont Lumber Company assumed to discharge these obligations. There was no obligation remaining in Theriot to pay the interest in question. The obligation was not carried out, and the title was lost. There was no responsibility upon Theriot to meet obligations that had been assumed by his vendee. Theriot was not to blame for the loss of the title. We grant that the Houston Oil Company of Texas, or its tenants, had the right, after the forfeiture of this title, upon an application in writing to the General Land Office, to reinstate the purchase, by paying all amounts then due the state of Texas. This, however, was not done, and this record does not disclose that any effort had ever been made to reinstate the purchase. Practically 14 years have elapsed since the purchase was forfeited.

[6] The record, however, does not show that under his first purchase, Theriot ever complied with the obligation of settlement which rested upon him. At any rate, the right to reinstate, if it in fact has existed, has never been availed of, and we do not believe that the naked right to reinstate amounts to title. Lawless v. Wright, supra. It seems to us apparent, therefore, that the Houston Oil Company of Texas had no title of any character under Theriot's first purchase. When Theriot made the second purchase of the land in question, he paid $3 per acre, and he purchased on condition of settlement, it being required that he occupy the land for 3 consecutive years, and that he make permanent and valuable improvements thereon, at least worth $300. It was subject to sale only to actual settlers, and a corporation cannot be an actual settler. No title could have passed by estoppel to the Houston Oil Company of Texas at the date of Theriot's second purchase, as contended by appellees, for the obvious reason that the land had to be occupied for 3 consecutive years by an actual settler, and that these conditions could not be complied with by the Houston Oil Company of Texas. Theriot in fact had no title which he could convey the Houston Oil Company of Texas before the three years' occupancy was completed, and if he had no title which he could convey, it occurs to us that he had no title that could pass by estoppel.

The question then arises, Did the title pass when Theriot completed his 3 years' occupancy? If so, then it must be admitted that the Houston Oil Company of Texas had the right to require Theriot to live on the land 3 years for its benefit, and the right to require him to spend his money for its benefit, in making permanent and valuable improvements to the extent of $300.

There are a great many authorities which hold in similar cases that a person situated as Theriot was as fully authorized to purchase the land as any other person. Snyder v. Snover, 56 N. J. Law, 20, 27 Atl. 1013, uses the following language:

It is held that "there is no legal principle which prevents a man who has conveyed a piece of land from another acquiring title to it in the same manner as other persons might. He may not deny that his deed conveyed a good title, but he may show that by subsequent acts the title or some interest in the land has passed back to him."

We shall not go into a discussion of the various cases that have been submitted to us by parties to this case, but in the case of Lang v. Crothers, 21 Tex. Civ. App. 118, 51 S. W. 271, which was a case in which the title of the purchaser of school land had been forfeited for nonpayment of interest due the state, a tenant acquired the land by purchase from the state, the court says:

"* * * But it seems to be as well settled that he can do either, without surrender of possession, where the landlord's title has been legally extinguished or determined, so that it no longer exists, and he has become the purchaser of the paramount title. Ryder v. Mansell, 66 Me. 170; Hardin v. Forsythe, 99 Ill. 320; Lancashire v. Mason, 75 N. C. 458; Presstman v. Silljacks, 52 Md. 656; St. John v. Quitzow, 72 Ill. 335; Higgins v. Turner, 61 Mo. 250; 2 Tayl. Landl. & Ten. (8th Ed.) pars. 629, 708. Here Lang's title had been canceled and forfeited by the commissioner for nonpayment of the annual interest installments due on the purchase, which cancellation or rescission our Supreme Court has held may lawfully be made by the commissioner, though purchased under the act of 1883. Fristoe v. Blum [92 Tex. 76], 45 S. W. 998. This forfeiture or rescission took place in the year 1896, and, when made by the commissioner, terminated and extinguished Lang's title completely; and, the land being legally placed upon the market and Crothers being an actual settler thereon, he had the right to apply for the purchase thereof, the same as if he had never been a tenant of Lang, unless Lang had applied for reinstatement of the Coulson sale within the time required by law, which would have been within 90 days from the date it was again placed upon the market. He did not, by setting up his title in defense of Lang's suit, or by showing that Lang's purchase had been forfeited, dispute the title of Lang under which he entered. The logic of his plea and de-

fense was: 'True, Lang had title when I rented from him, but that title then held by Lang had, by the neglect and default of Lang, reverted to the state, and I bought the state's title, the paramount title, Lang's title having been extinguished, so that when this suit was brought it no longer existed.'"

The rule laid down in Am. & Eng. Enc. of Law, vol. 8, p. 171, seems to be that where the title to land is lost by the foreclosure of an incumbrance assumed by the covenantee, the covenant is extinguished, and no recovery can be had upon the covenant of warranty, because of the extinguishment thereof in such manner. Other authorities place the rule upon the proposition that where the forfeiture is due to the laches or default of the vendee, the covenant of warranty is not breached, nor can a recovery be had where the loss results from such default. It is said by an eminent authority:

"Estoppel against estoppel commonly sets the matter at large, which is another limitation of the doctrine under consideration (estoppel by deed). And such a case occurs where the deed is encountered by another instrument of equally high rank, inconsistent with the same and made between the same parties. 'In this case,' said the court in Brown v. Staples, 'Winthrop Allen could maintain no action upon the covenants of the deed made to him by the demandant for a breach occasioned by his being deprived of the land by virtue of the mortgage made by Elliott Staples to John Welles, for he had, by an obligation of as high a nature, obliged himself to discharge that mortgage, and had thereby annulled the operation for such purpose of those covenants. It has been decided that a covenant of warranty would not include an incumbrance which the grantee had engaged to discharge." Bigelow on Estoppel, page 392.

In the case of Smith v. Montes, 11 Tex. 24, the following language is used:

"I am aware of no principle of law which would prevent a vendor who, after title has passed, remains in the undisturbed and exclusive possession of the property, without recognition of the vendee's rights, from claiming the benefit of the statute."

The decision in Smith v. Montes was followed in the case of Harn v. Smith, 79 Tex. 314, 15 S. W. 242, 23 Am. St. Rep. 340, wherein it is said:

"But appellant says that defendant and her husband sold the land to Herring, under whom plaintiff claims, and warranted the title to him, and therefore she cannot claim title by possession against her and her husband's warranty, but that the title so acquired (if it could be) would inure to the warrantee. We cannot agree to this. It had as well be said that the vendor cannot disseise his vendee or acquire a title from him. He can acquire title from his vendee by limitation where the deed is executed. Rawl on Covenants, p. 398. The covenant of warranty will not defeat such title acquired after the deed. Such title is no breach of the covenant, which cannot be extended to cover laches of the vendee by which he loses the title conveyed to him. Stearns v. Hendersass [9 Cush.] 63 Mass. 497 [57 Am. Dec. 65]."

T. & P. v. Maynard, 51 S. W. 255; Thompson v. Wiesman, 98 Tex. 175; Dickey v. Forrester, 148 S. W. 1181.

We are not disposed to burden this record with a further citation of authorities, but cannot omit to cite the following language from Kelso v. Pratt, 26 Tex. 381:

"The covenant of warranty in the deed had reference to the state of the title at the date of the bond. It cannot be construed as an undertaking on the part of Pratt to be accountable for the acts or omissions of Kelso, after that date, by which he may have parted with the title. It was not the fault of Pratt that the land was sold to satisfy the judgment against Kelso for the purchase money for the land, which the latter had failed to pay. It was the fault of Kelso—the consequence of his failure to pay the purchase money. Pratt can no more be held responsible to the heirs * * * for the sale of the land by the sheriff to satisfy the judgment against Kelso than he could be for a sale of the land by Kelso himself."

Also the language of Judge Brown, in the case of Foster v. Johnson, 89 Tex. 640, 36 S. W. 67:

"The tax sales at which Daggett bought were made for taxes accruing upon the land after he sold to Brown, and the purchase made by Daggett at such sale did not inure to the benefit of either Brown or Stone, for the reason that his warranty was not broken by the fact that the land was incumbered for such taxes."

We believe the authorities above cited are decisive of the questions raised by the appellant in his assignments from the third to the sixth assignments of error, inclusive, save and except the proposition of appellees not being innocent purchasers for value, and without notice. As we understand this record, appellees did not claim in the court below, and do not claim in this court, that they purchased without notice of the claim of the Houston Oil Company of Texas, under the first sale from the state of Texas to Theriot. There is no such question of innocent purchaser, as we view the matter, involved in this case.

Therefore we are persuaded to believe that the Houston Oil Company of Texas has no title under the first sale made by the state of Texas to Theriot, for the reason that the title was extinguished by the forfeiture of the land for nonpayment of interest, and that the forfeiture was not affected by the right accorded by the statute to a purchaser, to reinstate a forfeited purchase upon written request, and upon the payment to the state of the amount due, because no application has been made to reinstate, the right has never been exercised to reinstate, and the *forfeited title has never been revived.*

We are of opinion, also, that the Houston Oil Company of Texas has no title under the second purchase by Theriot, for the reason that through its neglect and default the title conveyed to its grantors by Theriot was lost. Theriot's covenant of warranty was not breached. In addition, we may say that Theriot, in our judgment, was qualified to purchase the land from the state of Texas upon its resale, and the title so acquired did not pass to the Houston Oil Company of Texas by virtue of estoppel.

What we have said disposes completely of all of appellant's assignments of error. We believe that the court was correct in its

judgment, and that the appellees, under the facts and the law, were entitled to recover.

The judgment of the lower court is, in all things, affirmed.