### KIER et al. v. GILES et al.

#### No. 12278.

Court of Civil Appeals of Texas.
San Antonio.

May 23, 1951.

Rehearing Denied June 13, 1951.

L. L. Gragg, Corpus Christi, for appellant.

Richard D. Hatch, Aransas Pass, Fischer, Wood, Burney & Glass, Corpus Christi, and Price Daniel, Tom McElroy, and Hayden W. Head, all of Austin, for appellee.

NORVELL, Justice.

The principal relief sought by the appellants in this cause was a writ of mandamus commanding the Commissioner of the

General Land Office to reinstate the Ransom Island Lease originally executed by the Land Commissioner to the City of Aransas Pass on November 4, 1927, pursuant to authority of House Bill No. 102, Chapter 85, Page 234, of the First Called Session of the 40th Legislature, 1927. Some time prior to 1927, the City of Aransas Pass had constructed a causeway to the island and the lease executed by the Land Commissioner was for a term of fifty years from and after November 3, 1927, but contained the following forfeiture clause in accordance with the wording of the statute: "If for any cause whatsoever the roads or causeways and other improvements should become unusuable and unfit for use for a period of three years for the purpose for which the lease was granted or if the lessee should fail or refuse to keep said area open to the public for the purpose for which the lease was granted, the said lease shall be subject to forfeiture and when the Commissioner of the General Land Office is sufficiently informed of the facts which work a forfeiture he shall forfeit said lease by an entry to that effect upon the duplicate copy of the lease on file in the General Land Office, and all rights of the lessee shall terminate and the area revert to the State and become as if no lease had been granted therefor; provided, upon satisfactory showing made to the said Commissioner, by the lessee that it will restore or have restored the improvements to a usable condition within twelve months after dates of forfeiture, the said Commissioner shall upon such restoration, reinstate said lease and the lessee shall thereafter have all the rights that were formerly vested therein under the original lease."

On September 10, 1948, Bascom Giles, Commissioner of the General Land Office declared the lease forfeited. During the month of August, 1949, some of the appellants attempted to place the causeway which had been destroyed in a usable condition, but after hearing and upon investigation the Land Commissioner refused to reinstate the lease with the result that this action was filed by appellants, who are holders of various rights under the lease as assignees of the City of Aransas Pass.

Two controlling questions are presented: First: Was the forfeiture of September 10, 1948, made in accordance with the Act of the Legislature hereinabove mentioned? Second: Was it conclusively established that the causeway, roads and grounds were restored to a usable condition within one year after September 10, 1948?

Findings of fact and conclusions of law were prepared and filed by the trial court and served as the basis for the following statement:

Ransom Island lies off the Texas Gulf Coast and is the property of the State. The acreage covered by the lease to the City of Aransas Pass was 971.12 acres of land. However, much of this area is under water and the land subsequently assigned to appellant Ray E. Kier and others, and used for building purposes does not exceed twenty-five acres. One of the required considerations for the lease under the statute was the agreement by the City of Aransas Pass to maintain and improve or cause to be maintained and improved the wharf and roads and causeways then (1927) in existence and keep the same in a usable condition, and further improve and beautify the area so that it would be available to the public for use as a park and general vacation center.

On or about August 30, 1942, the causeway leading from the mainland to Ransom Island was washed out by a storm and remained in an unusable condition until some time during the month of July, 1945, when some of the appellants attempted to repair the causeway. However, on August 29, 1945, another storm washed out these repairs or improvements, with the result that from August, 1945, until September 10, 1948, and for a period longer than three years before the cancellation of the lease, the causeway from the mainland to Ransom Island was not in a usable condition. On September 10, 1948, Bascom Giles, Commissioner of the General Land Office of the State of Texas, forfeited said lease and entered such forfeiture on the file wrapper enclosing the duplicate copy of the lease on file in the General Land Office. Thereafter, during the month of August, 1949, some of appellants again attempted to place ·

the causeway in a usable condition, but failed to do so. From and after the time the causeway was washed out, in August of 1942, the roads and other improvements on Ransom Island were allowed to deteriorate and were not repaired or restored to usable condition prior to October 19, 1949, when the Land Commissioner refused to reinstate the lease.

On September 7, 1949, the Land Commissioner made a personal inspection of the causeway and the improvements on the island. He also held a public hearing in the City of Aransas Pass on said date for the purpose of determining whether or not the causeway and improvements had been restored to usable condition within one year from and after the date of cancellation, that is, September 10, 1948. On October 19, 1949, the Land Commissioner having determined to refuse to reinstate the Ransom Island lease because of the failure to make a satisfactory showing of restoration as required by the terms of the lease, entered on the duplicate copy of such lease on file in the General Land Office a notation of such refusal of reinstatement, and at the same time noted thereon the forfeiture of the lease which had occurred on September 10, 1948.

The trial court found that the Land Commissioner was sufficiently informed of the facts working a forfeiture of the Ransom Island lease on September 10, 1948, and was sufficiently informed of the facts upon which he based his refusal to reinstate the Ransom Island lease on October 19, 1949. The court held that the Land Commissioner had not acted in an arbitarary, illegal, capricious or unreasonable manner in cancelling the Ransom Island lease or in refusing to reinstate the same. Judgment was rendered that appellants take nothing by their suit.

The Act of the Legislature provides that "when the Commissioner of the General Land Office is sufficiently informed of the facts which work a forfeiture he shall forfeit said lease by an entry to that effect upon the duplicate copy of the lease on file in the General Land Office, and all rights of the lessee shall terminate * * *." The entry of forfeiture of September 10, 1948,

was made upon the file jacket or file wrapper which contained the duplicate copy of said lease, together with other papers relating to said Ransom Island lease, rather than upon the duplicate copy. Appellants assert that as a forfeiture is involved, the provisions of the statute relating thereto must be strictly construed, and that the entry upon the file wrapper was not sufficient to satisfy the provisions of the statute.

We regard this point as having been settled adversely to appellants' contention by the cases of Brightman v. Comanche County, 94 Tex. 599, 63 S.W. 857, and Hoefer v. Robison, 104 Tex. 159, 135 S.W. 371, 372. In the case last cited Article 4218(1) of the Revised Statutes of 1895 was involved, which directed that in case of default the Land Commissioner should cancel an application for the purchase of State Land by indorsing on the purchaser's obligation, the words "Land Forfeited" and cause an entry to that effect to be made on the account kept with the purchaser. The Commissioner indorsed the words of forfeiture upon the account and the file wrapper, and then by mistake indorsed the obligation of a former purchaser. The Supreme Court held that the indorsement upon the file wrapper was sufficient to meet the requirements of the statute. The Court said:

"It is insisted that a strict compliance with the law is required to sustain a forfeiture, and *as to the facts which transpired and upon which a forfeiture is declared* the contention is correct. But it has been held by this court that a substantial compliance with the requirements of the statute in making the indorsement specified is sufficient. Brightman v. Comanche County, 94 Tex. 599, 63 S.W. 857. * * *

"Although, in this instance, the obligation was in fact in the office, *it was inclosed in the file wrapper with all papers connected with that tract of land, and the indorsement, 'Land Forfeited,' being placed upon the file wrapper and upon the account, meets all the requirments of the statute in a substantial way*, notwithstanding the indorsement was improperly made upon an obligation not then in force. The indorsement upon that obligation could not in any

way assist in sustaining the forfeiture; but, discarding it, as if no indorsement upon any obligation had been made, the facts still are sufficient to show a substantial compliance with the requirements of the law, and sufficient to support the forfeiture as it was declared." (Italics ours.)

Appellants' position is not supported by the case of Chambers v. Robison, 107 Tex. 315, 179 S.W. 123, 124, where it appears that the Commissioner wholly failed to make an indorsement on the account, although the purchaser's obligation was correctly indorsed. The case cited reaffirms the Court's holding in Brightman v. Comanche County, and Hoefer v. Robison, and although the Court said, that "Where a statute clearly provides that two distinct acts of this nature, which, though of the same general character, have to do with distinct and different official records, shall be performed as a condition for the accrual of a forfeiture, it is difficult to find any stable ground for holding that the performance of one of them is a substantial observance of the dual requirement", it was also stated, that "While a strict compliance with the law in respect to the facts upon which the forefeiture proceeds is required, the rule of decision is that an exact and literal compliance with these provisions relating to the indorsement and entry is not necessary. A substantial compliance with them will suffice to effect the forfeiture. Brightman v. Comanche County, 94 Tex. 599, 63 S.W. 857; Hoefer v. Robison, 104 Tex. 159, 135 S.W. 371. The question here is whether, making the indorsement of forfeiture upon the obligation, alone, amounts to a substantial compliance."

It might be pointed out that probably as a result of the Supreme Court's holding that an indorsement on the file wrapper was a substantial compliance with the requirements of Article 4218–1, R.S.1895, the Legislature thereafter provided that entries of forfeitures should be indorsed on the file wrappers. Article 5326, Vernon's Ann.Civ. Stats. The Land Commissioner testified that it was the general custom or practice of the Land Office at the present time to indorse all entries of forfeiture on the file wrapper as was done in the present instance.

■ We can not agree with appellants that the indorsement or the reason stated therein for cancellation of the lease was insufficient. The indorsement upon the file wrapper was as follows: "Cancelled for failure to maintain causeway as provided by Chapt. 85, 1st Called Session of the 40th Leg., and in accordance with the lease within, 9–10–48, Bascom Giles, Com'r."

■ The obvious purpose of the statute and the lease executed in pursuance thereof was to make provision for a park and general vacation center which would be accessible to the public by automobile or land conveyance. The maintaining of a park or center which could be reached only by boat would obviously not fulfill the purpose contemplated by statute. If the causeways were not maintained for a period of over three years, the lease was obviously subject to forfeiture.

We hold that the lease was properly forfeited by the Land Commissioner.

With reference to the refusal of the Land Commissioner to reinstate the lease, the trial judge, as hereinabove pointed out, found that "from and after the time that the causeway washed out on or about August 30, 1942, the roads and other improvements on Ransom Island were allowed to deteriorate and were not repaired or restored to usable condition prior to October 19, 1949."

This is a fact finding by the court below, that the restoration of roads, causeways and other improvements required by the statute did not take place within one year after the forfeiture of September 10, 1948.

The statute seemingly contemplates that in determining whether or not a restoration has been made so that the lease should be reinstated in accordance with its terms (which are stated in the language of the statute), the Land Commissioner is vested with original authority to determine the facts with reference to the claimed restoration of the improvements. In making this fact determination, the Commissioner is vested with a discretionary power, and as long as his decision is reasonably supported by substantial evidence it should not be disturbed. In this case, however, the trial

judge not only held that the Land Commissioner did not act in an arbitrary, illegal or unreasonable manner in refusing to reinstate the lease, but, as indicated above, found as a judicially determined fact that the required repairs and restorations had not been made. If this fact finding be supported by evidence, it follows that a writ of mandamus can not issue commanding the Land Commissioner to reinstate the lease.

Although other witnesses testified as to the unsatisfactory condition of the restored causeway and roads, the testimony of the Land Commissioner was in itself sufficient to support the finding above set out. The Commissioner testified that after he had been notified of appellants' claim that the causeway and improvements were in a satisfactory state of restoration, he received an unfavorable report of an engineer from his office, who had inspected the roads and causeways. He then set the matter down for public hearing on September 7, 1949, at which time he made a personal inspection of the premises. According to the Commissioner, there was a bridge near the mainland, apparently constructed a year or two previously, that was in fair condition, except that it was sunken in places so that the floor or deck thereof was "wavy" and would vary in elevation in places from a foot to eighteen inches. Upon proceeding eastward toward the island, the Commissioner found that the causeway was fifteen or eighteen feet wide in places and twenty to twenty-two inches above the water. As he proceeded to the east, however, he found two or three "weak spots" where the way was only eight or ten feet wide and only six inches above the surface of the water. He found the weakest spot at the foot of the island where an old bridge had been. Here the causeway was not over ten feet wide and it was necessary to follow ruts in the surface in order to negotiate a passage. The surface of the way was not over six or eight inches above the water, and the ruts were cut down and filled with water. The Commissioner said that he expressed some apprehension about driving over this section of the causeway in an automobile, but finally decided to try it and reached the island in safety. His expressed opinion at the time was that the causeway "wouldn't last at all, probable not over a week, and certainly not over a month, and might not last through the night."

It appears that about three weeks later the causeway was washed out at the foot of the island at the point described by the Land Commissioner.

Appellants' evidence was to the effect that they had hauled 426 loads of clay and sand over the causeway and spread the same over the way and used it to construct fills, and that a large road maintainer and about 150 automobiles had crossed over from the mainland to the island on the causeway and returned again.

 We believe the lease and statute contemplate something more than roads and causeways that are barely passable. Surely such ways must be of reasonable permanence and constructed so that they may be used with safety and convenience by the public generally. When full effect is given to the testimony of the Land Commissioner under recognized requirements, 3B Tex.Jr. 457, Appeal and Error, § 941, it is clear that the trial judge's finding has support in the evidence and can not be disturbed.

The appellants' brief discloses no reversible error and the judgment appealed from is accordingly affirmed.